———◆◆◆———

### SUPREME COURT.

### HERMANCE agt. JAMES.

Where the complaint alleged that "the defendant, contriving and wickedly and unjustly intending to injure the plaintiff, and to deprive him of the affections, comfort, fellowship, society and assistance of Rachel his (plaintiff's) wife, did, at, &c., wrongfully and unlawfully purpose, plan and undertake to alienate the affections of his (plaintiff's) said wife ; and did then and there, for the accom-

plishment of such purpose" (by various professions and pretences set forth), "and by false insinuations against the plaintiff, and by other insiduous wiles, to prejudice and poison the mind of the said Rachel, against the plaintiff, and so far alienate her affections from her said husband, as to induce the said Rachel to desire and seek to obtain a divorce or separation from the said plaintiff; and that the defendant on or about the first day of February, 1866, did counsel, advise, aid and assist the said Rachel in efforts to procure the commencement of proceedings for such divorce or separation, he the defendant, well knowing that no cause or lawful ground existed for either a divorce or separation. And that the said defendant did by the means aforesaid, so far prejudice and poison the mind, &c., of the said Rachel against the said plaintiff; and did so far alienate her affections from the plaintiff, as to persuade and induce her to refuse to recognize or receive the plaintiff as her husband; .and that on or about the 15th day of March, 1866, the said Rachel acting under the wrongful and unlawful advice, influence and direction of the said defendant, did refuse to recognize or receive the plaintiff as her husband, or to live with him as his wife; and said Rachel has from thence hitherto acting under the like advice, influence and direction of the said defendant, persisted in such refusal; and by means of the premises the plaintiff has from thence hitherto, wholly lost and been deprived of the comfort, fellowship, society, aid and assistance of the said Rachel, his said wife, &c. Whereupon the plaintiff demands judgment," &c. :

*Held* on demurrer to the complaint that the facts alleged constituted a *cause of action*, and a ground for damages.

And the consequences of such alleged acts—the alienation of the affections of the plaintiff's wife, and her refusal to recognize the plaintiff as her husband, &c., constitute a cause of action, although there is *no actual absence* or *separation*, physically, by the wife from the plaintiff.

*St. Lawrence General Term, October, 1866.*

*Before* BOCKES, JAMES, ROSEKRANS *and* POTTER, *Justices.*

THIS is an appeal from an order of a special term, overruling a demurrer of the defendant to the plaintiff's complaint.

J. A. SHOUDY, *for plaintiff.*
C. M. BRIGGS, *for defendant.*

*By the court,* POTTER, J. The complaint charges that the defendant "contriving, and wickedly and unjustly intending to injure the plaintiff, and to deprive him of the affections, comfort, fellowship, society, aid and assistance of Rachel, his (plaintiff's) wife, did, at, &c., wrongfully and unlawfully purpose, plan and undertake to alienate the affections of his (plaintiff's) said wife; and did then and there for the accomplishment of such purpose" (by various professions and

pretences set forth), " and by false insinuations against the plaintiff, and by other insiduous wiles, so prejudice and poison the mind of the said Rachel against the plaintiff, and so far alienate her affections from her said husband, as to induce the said Rachel to desire, and seek to obtain, a divorce or separation from the said plaintiff; and that the defendant, on or about the first day of February, 1866, did counsel, advise, aid and assist the said Rachel in efforts to procure the commencement of proceedings for such divorce or separation, he, the defendant, well knowing that no cause or lawful ground existed for either a divorce or separation.

And that the said defendant did by the means aforesaid, so far prejudice and poison the mind, &c., of the said Rachel against the said plaintiff, and did so far alienate her affections from the plaintiff as to persuade and induce her to refuse to recognize or receive the plaintiff as her husband; and that on or about the 15th day of March, 1866, the said Rachel acting under the wrongful and unlawful advice, influence and direction of the said defendant, did refuse to recognize or receive the plaintiff as her husband, or to live with him as his wife; and said Rachel has, from thence hitherto, acting under the like advice, influence and direction of the said defendant, persisted in such refusal; and by means of the premises, the plaintiff has from thence hitherto, wholly lost and been deprived of the comfort, fellowship, society, aid and assistance of the said Rachel, his said wife, in his domestic affairs, and also, consequently, of the affection, comfort and society of the plaintiff's infant daughter, which he, the plaintiff, during all that time, ought to have had, and otherwise might and would have had; and the plaintiff has thereby been otherwise much damnified and injured.

Wherefore, the plaintiff demands judgment, &c.

Admitting, as a demurrer does, the facts alleged, do they constitute a cause of action? This seems to be the only question in the case. It is insisted that the acts specifically charged, are not unlawful; and that, therefore, no action can be maintained.. The conclusion from the premises of this proposition, is a *non sequitur*, and is not sound. It is not

the act alone, but it is the consequence which may directly or naturally result from an act, for which the party may be responsible; and most especially is this the case when the act is done mischievously, designedly and wickedly, or with intent to produce the consequences that ensue; and a party is answerable criminally as well as civilly for such consequences.

The questions then in this case are, were the consequences alleged, the direct and natural result of the defendant's acts? and if so, are they the subject of an action, or the ground of damage?

I am not able to see anything unnatural in the result charged, but the contrary. If, as admitted by the demurrer, the defendant contrived, and with a wicked intent, tried to deprive the plaintiff of the society, affections, aid and assistance of his wife, and with such intent did perform the acts alleged; if he did attempt to persuade and induce her to refuse to recognize or receive the plaintiff as her husband; and if she afterwards did so refuse to recognize or receive her said husband, or to live with him as his wife; if the plaintiff subsequently lost, and was deprived of the comfort, fellowship, society, aid and assistance of his wife in his domestic affairs, it is not only legally the direct and natural result of such interference, and necessarily to be deduced from the facts alleged, but it is a fact that stands charged and admitted upon the record, as the consequence of the act of the defendant.

This brings us to the real and only point in the case to be considered. Does such alienation of affection—such refusal to recognize and receive the plaintiff as her husband, and to live with him as his wife—such deprivation of the comfort, fellowship and society of a wife—such loss of her aid and assistance in his domestic affairs, as is charged, when there is no actual physical absence or separation from him, constitute a cause of action, when caused as charged in the complaint?

Separation is the usual consequence of such interference, and the cases found in the books are cases of actual sepa-

ration from the house and home of the husband. And it is insisted upon the argument, that an allegation of pecuniary loss, or of loss of service by an actual leaving or continuing away from service, is necessary to show a cause of action.

I do not think this argument is sound. "The gist" of the action is the loss of the comfort and society of the wife (*Weedon* agt. *Timbrell*, 5 *Term R.* 357, 360). ASHURST, J., said in this case: "The gist of the action is the loss of the comfort and society of the plaintiff's wife; that is always inserted in declarations of this kind, as a material and substantial allegation, and the forms of pleading are evidence of the law." In *Hutchinson* agt. *Peck* (5 *Johns. R.* 207–8), SPENCER, J., held, even in the case where a father had given protection to his child, that if he did it maliciously or improperly, against the will of the husband, and thereby deprived him of the comforts he is entitled to enjoy from her aid and society, most undoubtedly an action will lie.

And this proposition of Judge SPENCER is not to be regarded as being at all in conflict with the remark of VAN NESS, J., in the same case, who said: "The true and only inquiry is, has the conduct of the defendant occasioned *damnum cum injuria*, to the plaintiff? If both have been shown, the action is maintainable." If the gist of the action be the loss of the comfort of the society of the wife, then damages with injury, is fully stated and shown.

In *Wensmore* agt. *Greenback* (*Willes' R.* 581), it was laid down: "that by '*injuria*,' is meant a tortious act;" and this is fully charged in the present case.

In *Hutchinson* agt. *Peck* (*supra*), THOMPSON, J., said: "the *quo animo* with which the defendant acted, ought to have been made the material point of inquiry."

In this case before us, the *quo animo* is fully alleged and admitted. In the case of *Wensmore* agt. *Greenback* (*supra*), which is a leading case, cited with approbation in *Hutchison* agt. *Peck*, the same objections substantially, were made to the declaration in that case as in this, of omissions of allegations. Ch. J. WILLES said: "To be sure it must be an unlawful procuring, but it is not necessary to set forth all

the facts to show how it was unlawful." It was insisted that it was necessary to state in the complaint that it was by "false insinuations," but the judge remarked, "that it was not material whether they were true or false; if the insinuations were true, and by means of those, the defendant persuaded the plaintiff's wife to do an unlawful act, it was unlawful in the defendant." And again he says: "Every moment that a wife continues absent from her husband (without justifiable cause), without his consent, is a new tort, and every one who persuades her to do so; does a new injury, and cannot but know it."

Our own courts, to their credit, have quite uniformly adopted the same high moral view of the law and of public policy in this regard, as they have in England. In *Bennett* agt. *Smith* (21 *Barb* R. 441), T. R. STRONG, J., held this language : " The wife owes to the husband the duty of living with him, and seeking to promote his interests and happiness ; and preventing the performance of that duty, a wrong is done to him involving a pecuniary loss, as well as a loss of peace and comfort in the marriage relation. Whoever is the wrong-doer, he should be subject to an action for damages by the husband." The judge who tried the action last cited, charged the jury " that if the defendant by persuasion or force, prevented the plaintiff's wife from returning to her husband, he was liable ; or if he persuaded her to stay away from her husband, such persuasion was an unlawful act, and that the law imputes an unlawful purpose to all persons who do an unlawful act ; and that if the defendant had done either of these he was liable, without reference to his motives or intentions."

The general term of the seventh district held this charge to be sound. Such an injury is analogous to, and differs only in degree from an injury to the husband by criminal conversation with the wife. In each case it is alienating the wife's affections from her husband, and destroying the comfort he enjoyed in her society.

So in the case of *Schuneman* agt. *Palmer* (4 *Barb.* 227), HARRIS, J., laid down the rule: " The husband has the right

to the society and assistance of his wife, and whoever persuades or entices her to separate herself from him, and thus deprives him of that 'right, is liable to an action." And again : " Whenever a wife is unjustifiable in abandoning her husband, he who knowingly and intentionally assists her in thus violating her duty is guilty of a wrong, for which an action will lie." This principle was repeated in *Barnes* agt. *Allen* (30 *Barb.* 663).

The case before us differs from the cases cited not in principle, but only in the fact that there was no actual departure of the wife from the husband's house. But how does this fact change the case, or the principle to be determined by it? The injury in either case is the same. I am not sure that it is not aggravated by her remaining. Here was the same poisoning of the mind, the same alienation of her affections, the same refusal to receive him as her husband, and to live with him as such ; the same refusal of her comfort, fellowship, society and of her aid and assistance in his domestic affairs ; all that constitutes the gist of the action, all equally induced by the unlawful act of advice of the defendant. Her actual presence with him under such circumstances, maintaining towards him such feelings, could afford him no relief, but would rather add the provocation of insult to the keenness of the injury inflicted ; it would continue a present, living, irritating, aggravating, if not consuming source of grief, which her absence might in a measure relieve. At all events, it would relieve him from the burthen of her support. It is laid down by *Bishop* in his work on *Marriage and Divorce* (§§ 797, 781, 782, 799), that the refusal of a husband or wife to dwell with the other party to the marriage as husband or wife, is *desertion ;* and the same authorities hold that there may be a desertion though the parties continue to occupy the same house. (1 *Bishop,* § 779 ; 2 *Litt.* [*Ky.*] *R.* 337 ; *Moss* agt. *Moss,* 2 *Indell's* [*N. C. R.*] 35.)

How is desertion then to be distinguished from separation ? What reason is there that requires a technical physical separation to constitute a cause of action ? I apprehend that the separation which occasions the injury, the suffering, the

loss, is based upon a higher principle than this ; it strikes at the highest enjoyment of life ; it is alienated affections ; it is the loss of comfort, fellowship and society ; it is the loss of aid and assistance in domestic affairs ; the loss of conjugal rights. It may, says *Bishop*, be laid down as a rule, that if one party refuse to the other whatever belongs in marriage alone, from causes resting in the will, and not from physical inability, the refusing party would thereby voluntarily withdraw from whatever the relation of marriage distinguished from any other relation existing between human beings, is understood to imply. Therefore, he should be holden to desert thereby the other (§ 782). Let the law be administered in all its fidelity and integrity, but let it not be made the subject of this reproach, that he who admits the infliction of the injury complained of in this case, may escape its penalties upon a mere frivolous and immaterial technicality.

I think the order of the special term was right, and should be affirmed.