ELVIRA J. BENNETT, Respondent, *v.* OLIVER BENNETT, Appellant.

A wife may maintain an action under the Code of Civil Procedure (§ 450), in her own name and for her own benefit, without joining her husband as a party, against one who has enticed him from her, alienated his affection and deprived her of his society.

*Van Arnam* v. *Ayers* (67 Barb. 544) overruled.

This right is not taken away or affected by the repeal in and by the general repealing act of 1880 (§ 1, subs. 36, 38, chap. 245, Laws of 1880) of the provisions of the acts of 1860 and 1862 in relation to married women (Chap. 90, Laws of 1860; chap. 172, Laws of 1862), which provided that a married woman may maintain an action in her own name to recover damages for injuries to her person or character.

*It seems* that at common law the right of action for a tort committed upon a married woman belonged to her, but she could not sue therefor without joining her husband; when, by statute, she was authorized to prosecute alone, it cut off the right of the husband and permitted her to sue and recover for herself.

The English authorities declaring the rule of the common law upon the subject, collated.

(Argued June 3, 1889; decided December 3, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made July 1, 1886, which affirmed a judgment in favor of plaintiff, entered upon a verdict, and affirmed an order denying a motion for a new trial.

The nature of the action and the facts are sufficiently stated in the opinion.

*Alexander Cummings* for respondent. This action is one affecting the property rights of plaintiff separately and independently of her husband. (Code Civil Pro. § 450.) To destroy all that a woman expects from the marriage relation must be a wrong done her; that wrong must have its remedy, and there can be none unless it be in her right to recover pecuniary damages for such trespass upon her rights. (*Searles* v. *Cronk*, 38 How. 324; *Graves* v. *Briggs*, 6 Abb. N. C. 41; 41 Barb. 186, 188; *Ashby* v. *White*, 2 L. Ray.

955; Bigelow on Torts, 153; *Westlake* v. *Westlake*, 34 Ohio, 621; *Clark* v. *Harland*, 1 Cinn. 418; Cooley on Torts, 227; 1 Addison on Torts [4th ed.] 36; *Brieman* v. *Paasch*, 7 Abb. N. C. 249; *Jaynes* v. *Jaynes*, 39 Hun, 40.) The action of the husband is not based on the loss of services of his wife, but may be maintained where the only loss sustained is the loss of society and companionship. (*Hermance* v. *James*, 47 Barb. 120; *Bigasuette* v. *Paulett*, 134 Mass. 123; *Michael* v. *Dunkel*, 84 Ind. 544; *Baker* v. *Baker*, 16 Abb. N. C. 293.) Married women may maintain actions for assault and battery, slander, etc., as actions affecting their separate estate, and actions by the husband for criminal conversation, actions for seduction, etc., are actions for injuries to the person. (*Dele-mater* v. *Russell*, 4 How. 233; *Bagle* v. *Decker*, 44 Barb. 577; *Taylor* v. *North*, 3 Code Rep. 9; *Steinberg* v. *Lasker*, 50 How. 432.) In this class of cases the amount of damages is, of necessity, entirely left to the judgment and discretion of the jury, and in the absence of any improper influence, passion, prejudice or disregard of law, their finding as to amount is conclusive. (*Coleman* v. *Southwick*, 9 Johns. 45; *Southwick* v. *Stevens*, 10 id. 443; *Travis* v. *Barger*, 24 Barb. 614; *Walker* v. *Erie R. Co.*, 63 id. 260; *Rockwell* v. *T. A. R. R. Co.*, 64 id. 438.)

*E. K. Clark* for appellant. The novelty of a particular action or defense, where the facts on which it is founded are of common occurrence, is a strong argument that it cannot be upheld. (*Duke* v. *Clark*, 8 Taunt. 609, 621; *Russel* v. *Men of Doven*, 2 Term R. 673.) The right to maintain the action is inconsistent with the well known and well-accepted relations of man and wife. (*Robins* v. *McClure*, 100 N. Y. 342.) The courts have expressly, or by implication, said the action would not lie at common law. (*Mehrhoff* v. *Mehrhoff*, 26 Fed. Rep. 14; *Logan* v. *Logan*, 77 Ind. 558; *Lynch* v. *Lynch*, 9 H. L. 577: *Clark* v. *Harlan*, 1 Cinn. 418; *West-lake* v. *Westlake*, 34 Ohio, 418; *Jaynes* v. *Jaynes*, 39 Hun,

40, 42.) The statutes of the state of New York have not abolished the common law unity of husband and wife. (*Bertles* v. *Nunan*, 92 N. Y. 159, 160 ; *Fitzgerald* v. *Quann*, 109 id. 441 ; *Mangam* v. *Peck*, 111 id. 404.) The common law unity of husband and wife has not been altered by the statutes beyond the exact letter, and that a strict construction is to be given to the letter of the statute. (*Bertles* v. *Nunan*, 92 N. Y. 160 ; *Fitzgerald* v. *Quann*, 109 id. 441, 445 ; *Zabriskie* v. *Smith*, 13 id. 333.) The action does not lie by the common law. (*Mehrhoff* v. *Mehrhoff*, 26 Fed. Rep. 14 ; *Westlake* v. *Westlake*, 34 Ohio, 621 ; *Logan* v. *Logan*, 77 Ind. 564.) The decisions in the state of New York sustaining the right of action proceed on the theory that the common-law is so changed by statute as to now permit the action. (*Jaynes* v. *Jaynes*, 39 Hun, 42, 44.) The law, as laid down by the Court of Appeals, is to the effect that the common-law rule has not been sufficiently changed by statute in the state of New York. (*Fitzgerald* v. *Quann*, 109 N. Y. 441 ; *Mangan* v. *Peck*, 111 id. 403.) Even if actions by wives for alienation of the affections of their husbands should be permitted, they should be restricted to such cases as clearly and fundamentally destroy this marriage relation. (*Mehrhoff* v. *Mehrhoff*, 26 Fed. Rep. 15 ; *Brieman* v. *Paasch*, 7 Abb. N. C. 240 ; *Clark* v. *Harlan*, 1 Cin. 418 ; *Westlake* v. *Westlake*, 34 Ohio, 418.) There is no proof on which to base a claim that the husband was enticed from the wife. (*Hutchinson* v. *Peck*, 5 Johns. 207.)

VANN, J. The plaintiff, a married woman, brought this action to recover damages from the defendant for enticing away her husband, and depriving her of his comfort, aid, protection and society. The defendant insists that neither at common law nor under the act concerning the rights and liabilities of husband and wife can such an action be maintained. It was provided by that statute that any married woman might, while married, sue and be sued in all matters having relation to her sole and separate property, and that

she might maintain an action in her own name, for damages, against any person or body corporate, for any injury to her person or character, the same as if she were sole. (Laws of 1860,. chap. 90, p. 158, § 7, as amended by chap. 172, Laws of 1862, p. 343.) An injury to the person, within the meaning of the law, includes certain acts which do not involve physical contact with the person injured. Thus criminal conversation with the wife has long been held to be a personal injury to the husband. (*Delamater* v. *Russell*, 4 How. 234; *Straus* v. *Schwarzwaelden*, 4 Bosw. 627.) And the seduction of a. daughter a like injury to the father. (*Taylor* v. *North*,. 3 Code Rep. 9; *Steinberg* v. *Lasker* 50 How. 432.) The Code of Civil Procedure, in defining "personal injury," includes, under that head, libel, slander, "or other actionable injury to the person." (§ 3343, sub. 9.)

It is well settled that a husband can maintain an action against a third person for enticing away his wife and depriving him of her comfort, aid and society. (*Hutcheson* v. *Peck*, 5 Johns. 196; *Barnes* v. *Allen*, 1 Abb. Ct. Ap. Dec. 111.) The basis of the action is the loss of *consortium*, or the right of the husband to the conjugal society of his wife. It is not necessary that there should be proof of any pecuniary loss in order to sustain the action. (*Hermance* v. *James*, 32 How. 142; *Rinehart* v. *Bills*, 82 Mo. 534.) Loss of services is not essential, but is merely matter of aggravation, and need not be alleged or proved. (*Bigaouette* v. *Paulet*,. 134 Mass. 125.)

According to the following cases a wife can maintain an action in her own name and for her own benefit against one who entices her husband from her, alienates his affection and deprives her of his society: *Jaynes* v. *Jaynes* (39 Hun, 40); *Breiman* v. *Paasch* (7 Abb. N. C. 249); *Baker* v. *Baker* (16 id. 293); *Warner* v. *Miller* (17 id. 221); *Churchill* v. *Lewis* (Id. 226); *Simmons* v. *Simmons* (21 id. 469).

There appears to be no reported decision in this state holding that such an action will not lie, except *Van Arnum* v. *Ayers* (67 Barb. 544). That case was decided at Special Term in

1877, and the learned justice who wrote the opinion therein, as a member of the General Term when the case now under consideration was affirmed, concurred in the result, and stated that, owing to recent authorities, he thought the right of action should be upheld. Some of the cases rest mainly upon the statute already alluded to, and sustain the action upon the theory that enticing away the wife is such an injury to the personal rights of the husband as to amount to an injury to the person, while others proceed upon the ground that the loss of *consortium* is an injury to property in the broad sense of that word, "which includes things not tangible or visible, and applies to whatever is exclusively one's own." *Jaynes* v. *Jaynes* (*supra*) sustains the action upon either ground, although prominence is given to the latter. Several of the cases justify the action generally without allusion to any statute. If the wrong in question is an injury to property simply, it would not abate upon the death of the plaintiff, but could be revived in the name of the personal representatives, a consequence which suggests the precarious nature of that basis for the action. (*Cregin* v. *Brooklyn Crosstown R. R. Co.*, 75 N. Y. 192; 83 id. 595.)

In other states the rule varies. In Ohio and Kansas recovery by the wife is permitted, while in Indiana the right thus far has been denied, but by a court so evenly divided in opinion as to leave the ultimate rule in that state uncertain. (*Clark* v. *Harlan*, 1 Cin. 418; *Westlake* v. *Westlake*, 34 Ohio St. 621; *Mehrhoff* v. *Mehrhoff*, 26 Fed. Rep. 13; *Logan* v. *Logan*, 77 Ind. 558.) In England the point does not appear to have been directly passed upon, but in one case the judges approached it so nearly and differed so widely in their discussions that it is cited as an authority upon both sides of the question. (*Lynch* v. *Knight*, 9 H. L. 577.) The lord chancellor (CAMPBELL), in delivering the leading opinion, said: "If it can be shown that there is presented to us a concurrence of loss and injury from the act complained of, we are bound to say that this action lies. Nor can I allow that the loss of *consortium*, or conjugal society, can give a

cause of action to the husband alone." LORD CRANWORTH was strongly inclined to think that this view was correct, but did not feel called upon to express a decided opinion, as it was agreed that the judgment of the court should be placed upon another ground. Lords BROUGHAM and WENSLEYDALE thought that the action would not lie. In that case, it is to be observed, the husband joined the wife in bringing the action " for conformity," as there was no enabling statute authorizing her to sue in her own name.

While this action was tried, decided at the General Term and argued in this court upon the theory that the acts of 1860 and 1862, concerning the rights and liabilities of husband and wife were still in force, in fact they have no application, because the sections heretofore regarded as applicable were repealed by the general repealing act of 1880. (Laws of 1880, chap. 245, §§ 36, 38.)

The judgment in this action, therefore, cannot be affirmed upon the ground that the wrong complained of may be redressed under those statutes. Can it be sustained upon the theory that the right of action belongs to the wife according to the general principles of the common law and that she may now maintain it, being permitted to sue in her own name ? The Code of Civil Procedure (§ 450), provides that a married woman "appears, prosecutes or defends, in an action or special proceeding, alone or joined with other parties as if she were single." The capacity of the plaintiff to sue cannot be questioned under this statute, but whether she has a cause of action to sue upon is the important inquiry. Can she maintain an action for any personal injury, even for an assault and battery, since the repealing act, already cited, went into effect ? Admitting her power to assert her rights in court, what right has she to assert ? Has she such a legal right to the conjugal society of her husband as to enable her to recover against one who wrongfully deprives her of that right ?

It is urged that the novelty of the action is a strong argument that it cannot be upheld. The same point was urged

in almost the first action brought by a husband against one who had enticed away his wife, and the answer made by the court in that case we repeat as applicable to this: " The first general objection is that there is no precedent of any such action as this, and that, therefore, it will not lie. But this general rule is not applicable to the present case. It would be if there had been no special action on the case before. A special action on the case was introduced for this reason, that the law will never suffer an injury and a damage without a remedy, but there must be new facts in every special action on the case." ( *Winsmore* v. *Greenbank*, Willes, 577, 580.)

Moreover, the absence of strictly common-law precedents is not surprising, because the wife could not bring an action alone, owing to the disability caused by coverture, and the husband would not be apt to sue, as by that act he would confess that he had done wrong in leaving his wife.

The actual injury to the wife from the loss of *consortium*, which is the basis of the action, is the same as the actual injury to the husband from that cause. His right to the conjugal society of his wife is no greater than her right to the conjugal society of her husband. Marriage gives to each the same rights in that regard. Each is entitled to the comfort, companionship and affection of the other. The rights of the one and the obligations of the other spring from the marriage contract, are mutual in character and attach to the husband as husband and to the wife as wife. Any interference with these rights, whether of the husband or of the wife, is a violation not only of a natural right, but also of a legal right arising out of the marriage relation. It is a wrongful interference with that which the law both confers and protects. A remedy, not provided by statute but springing from the flexibility of the common law and its adaptability to the changing nature of human affairs, has long existed for the redress of the wrongs of the husband. As the wrongs of the wife are the same in principle and are caused by acts of the same nature as those of the husband, the remedy should be the same. What reason is there for any distinction? Is

there not the same concurrence of loss and injury in the one case as in the other? Why should he have a right of action for the loss of her society unless she also has a right of action for the loss of his society? Does not the principle that "the law will never suffer an injury and a damage without a remedy" apply with equal force to either case? Since her society has a value to him capable of admeasurement in damages, why is his society of no legal value to her? Does not she need the protection of the law in this respect at least as much as he does? Will the law give its aid to him and withhold it from her?

It appears from the cases already cited that, according to the weight of authority, the wife can maintain such an action when there is a statute enabling her to sue. The modern elementary writers take the same position. "To entice away or corrupt the mind and affection of one's consort is a civil wrong, for which the offender is liable to the injured husband or wife. The gist of the action is not the loss of assistance, but the loss of *consortium* of the wife or husband, under which term are usually included the person's affection, society or aid." (Bigelow on Torts, 153.) "We see no reason why such an action cannot be supported where, by statute, the wife is allowed to sue for personal wrongs suffered by her." (Cooley on Torts, 227.)

The question remains whether a married woman can now maintain an action in this state for an injury to her person? Had a married woman a right of action at common law for a personal injury, but without power to assert it, owing to her coverture, or did the right itself belong to the husband? If the right was his, she seems to have no remedy for such wrongs since the repeal of the statutes of 1860 and 1862. If, however, the right was hers but, owing to the legal fiction of the unity of husband and wife, she could not assert it, she may now have a remedy under section 450 of the Code.

At common law the husband and the wife were treated as one person and marriage operated as a suspension, in most respects, of the legal existence of the latter. From this sup-

posed unity of husband and wife sprang all the disabilities of
married women.  She could not make a binding contract or
commence an action, because either would imply that she had
a separate existence.  He could not enter into a covenant
with her, because it would be only a covenant with himself.
They could not give evidence for each other, because no one
was then permitted to testify in his own behalf, nor against
each other, because no one could be compelled to accuse him-
self.  But marriage only suspended her personal rights, it did
not annihilate them nor transfer them all absolutely to her
husband.  While it was an absolute gift to him of her goods
and chattels, it was only a qualified gift to him of her choses
in action, depending upon the condition that he reduce them
to possession during coverture, as otherwise upon his death
they belonged to her.  (Bright's Husband and Wife, vol. 1,
pp. 34, 36; Clancy on Women, 109 ; Reeve's Domestic Rela-
tions [4th ed.] 1 ; 2 Kent's Com. [11th ed.] 116.)

" It is common doctrine upon which the decisions in all the
states of our Union and of England are in harmony, that, on
the death of the husband, the wife's choses in action, not
reduced by him to possession, survive to her.   She takes them,
not as his heir, personal representative or administratrix, but
they revert to her in her own right.   And we have seen that
this doctrine applies as well to the wife's post-nuptial choses in
action as to her ante-nuptial ones." (Bishop's Married Women,
§ 171.)   " The husband shall not have them unless he and his
wife recover them."   (Co. on Lit. 351, b.)

Under the head of choses in action, torts committed upon a
married woman, either before or during coverture, are included.
" Although the husband is  *  *  *  entitled to all the
property which the wife acquires during the coverture, yet,
if damages be claimed for an injury to her person or reputa-
tion during her coverture, those damages belong to her, and
she must be joined with the husband in the suit.   When
damages for such an injury are collected they belong to the
husband, but in case of his death before they are reduced to
possession they survive to the wife, in the same manner as if

the injury had been received before marriage." (Reeves' Dom. Rel. 87.)

" The wife has capacity to be a recipient of wrong as well as of property, the same as though she were sole. If she is slandered, or an assault and battery is committed upon her, or any trespass or other actionable wrong, she may, on becoming discovert, sue the wrong-doer the same as though she had been sole when she received the injury ; though if the suit is brought in the lifetime of her husband, he must be made a party plaintiff with her, in consequence of the general rule of law which places the wife under the protection of her husband. When the result of the wrong becomes money, in the form of damages paid by the wrong-doer, the wife, though she can receive, cannot hold it, and the title glides to the husband, making the money his." (Bishop on Mar. Wom. § 705.) The authorities are uniform in supporting the position of these writers. (*Latourette* v. *Williams*, 1 Barb. 9; *Klein* v. *Hentz*, 2 Duer, 633 ; *Ball* v. *Bullard*, 52 Barb. 142 ; *Beach* v. *Ranney*, 2 Hill, 309 ; *Smith* v. *Scudder*, 11 S. & R. 325; *Checchi* v. *Powell*, 6 Barn. & Cress. 253 ; *Bond* v. *Simmons*, 3 Atk. 20.)

The cause of action for a personal injury to a married woman, whether committed before or after marriage, belonged to her at common law, or else it would not survive to her upon the death of her husband. If it was his, it would either abate or pass to his personal representatives. On the other hand, if she dies, as Lord BACON said : " The action dies with her." (Bacon's Abr., Baron and Feme, K.) Unless the right was hers, subject only to the disability to sue without her husband, why should it cease upon her death ? Why should it not survive to the husband if the right itself was his ? So in the case of an absolute divorce such rights of action remain the property of the wife. (*Legg* v. *Legg*, 8 Mass. 99 ; *Lodge* v. *Hamilton*, 2 S. & R. 491.) If the injury was to the wife only, the action was brought in the name of both husband and wife, and was, in effect, her action. If the

injury was in part to her and in part to him, for the former both joined, but for the latter he sued alone. (*Johnson* v. *Dicken*, 25 Mo. 580; *Hooper* v. *Haskell*, 56 Me. 251; *Laughlin* v. *Eaton*, 54 id. 156.)

It is clear, therefore, that at common law the right of action for a tort committed upon a married woman belonged to her, and it is in the light of this principle that the full significance of section 450 of the Code becomes apparent. This section recognizes the separate existence of the wife to the broad extent of authorizing her to sue generally in her own name. By enabling her to prosecute as if she were single, it removed the only obstacle in the way of a personal assertion of her right in this regard. She had a right of action for any actionable injury before, but she could not set the law in motion unless her husband joined. When the legislature provided that she could sue in her own name, without this inconvenient formality, it cut off the right of the husband and permitted her to prosecute and recover for herself.

This view is confirmed by considering the history of legislation in relation to married women since 1848. Did the legislature suppose that, in repealing the sections in question of the acts of 1860 and 1862, they were restoring the rule of the common law and were depriving married women of substantial rights? (Endlich's Interpretation of Statutes, § 475.)

Every step in legislation, unless this is an exception, has been in the direction of the complete abrogation of the common-law unity of husband and wife. No step backward has been taken in that regard, unless this must be construed to be such.

The bar, the public and the courts have thus far all proceeded upon the theory that a married woman can still sue in her own name and for her own benefit for any injury to her person. It is a matter of common knowledge that, since the repealing act of 1880, in nearly every county of the state such actions have repeatedly been brought and tried, recoveries had and paid, and other actions brought that are now pending, upon the theory, adopted by both parties, that the

right of a married woman to sue for personal injuries still exists. Even the exhaustive brief of the learned counsel for the appellant contains no suggestion to the contrary. This practical construction by the bar, the public, the legislature and the courts is of great value, because a contemporaneous is generally the best construction of a statute. (Sedgwick on Stat. and Con. Law, 227.)

The disastrous consequences that would result from the opposite construction cannot be lost sight of, because for nearly nine years the people have conducted their business, the lawyers have advised their clients and the courts have administered justice, without exception, so far as known, in unquestioned reliance upon the unchanged rights of married women with reference to torts committed upon them. If such a radical change was effected by the repealing act, why was it not sooner discovered? By section 1906 of the Code of Civil Procedure an action for slander by the use of words imputing unchastity can be maintained by a woman without proof of special damage, and "if the plaintiff is married, the damages recovered are her separate property."

Was this section left simply as a landmark to show how far the tide of legislation had gone in the direction of emancipating married women before it began to flow back toward the old level of the common law? Is it not rather part of a harmonious system designed to permit married women to seek redress in their own names and for their own benefit, for any violation of their rights, whether of person or property? According to the Code of Procedure, when a married woman was a party, her husband was a necessary party with her, unless the action concerned her separate property, or it was between herself and husband. (Code Pro. § 114; Laws of 1849, chap. 438, § 114.) It was not by virtue of that Code, but owing to the acts of 1860 and 1862, that a married woman could sue for personal injuries.

From 1849 until 1877, section 114 of the old Code remained unchanged in this respect. When section 450 of the new Code was enacted it was a substitute for section 114, and the revisers,

in reporting the new section said : " It is believed that no argument is necessary in support of the proposition that what is left of that section by the various married women's acts should be swept away."

The object of the repealing act of 1880, as well as that of its precursor of 1877, as is evident from an attentive study of their provisions, was to do away with statutes and parts of statutes regarded as obsolete. (Laws of 1877, chap. 417; Laws of 1880, chap. 245.)

Owing to the enactment of the Code of Civil Procedure and other statutes revising and changing existing laws without repealing or referring to them, the legislature sought to repeal statutes and sections no longer regarded as operative. Its intention was to formally do away with that which had already been practically done away with, rather than to make further changes. If the legislature had intended to make a radical alteration in its long established policy of legislation affecting the rights of married women, it would not ordinarily be buried in the midst of an act designed to erase useless provisions from the statute book. One would not expect that such a decided change, affecting nearly every family in the state, would be so obscurely made.

These views are not in conflict with *Fitzgerald* v. *Quann* (109 N. Y. 441), which holds that in an action against the wife for a tort committed by her, as the husband is still liable, he is a proper party defendant.

At common law the husband was liable for the torts of his wife, whereas her choses in action, including the right to recover for torts inflicted upon her, never vested in him, although he was entitled to the proceeds when collected. As a party plaintiff, therefore, he was joined " for conformity," but it was " more than a mere necessity to join him as a party defendant." (*Fitzgerald* v. *Quann*, 33 Hun, 657, 658.) His joinder in the one case was a mere formality, while in the other it was on account of his liability. While he had no cause of action in the former, there was a cause of action against him in the latter.

We regard the language of section 450, when construed in connection with the common-law rules already alluded to, as strong enough to relieve a married woman of the formality of having her husband unite with her in bringing an action for an injury inflicted upon her, but not strong enough to relieve him of his absolute liability.

We think the judgment appealed from should be affirmed upon the ground that the common law gave the plaintiff a right of action, and that the Code gave her an appropriate remedy.

BRADLEY, J. The embarrassment, which seems to attend the disposition of this case, arises from the repeal by Laws of 1880, chapter 245, section 1, subdivisions 36, 38 of the amendatory section 3, chapter 172, Laws of 1862, and the amended section 7, chapter 90, Laws of 1860, which provided that a married woman might maintain an action in her own name to recover damages for injuries to her person or character, and that the proceeds of the recovery should be her property. The remaining statutes, which enable her to prosecute an action in her own name alone also, provide that it shall be neither necessary or proper to join her husband as a party with her in any action affecting her separate property. (Code, § 450.) This action is founded upon the disregard of the duties of the marital relation by the husband of the plaintiff, induced by the defendant, to the prejudice of the plaintiff. Marriage is a civil contract. (2 R. S. 138, § 1; *Clayton* v. *Wardell*, 4 N. Y. 230.) From such contract spring reciprocal duties of the parties to it, amongst which are those assumed by the husband, of her maintenance and his *consortium*, and thus to contribute to her comfort and enjoyment. To these means of her happiness, so far as practicable, she is entitled. As appeared by the verdict of the jury, the plaintiff's husband was induced by the defendant to essentially refuse to perform his marital undertaking or to regard her rights in that respect. And the damages arising from the denial to the plaintiffs of such rights result from a breach by the husband, so induced, of the contractual relation of marriage. But such

contract is *sui generis*, and differs from all other contracts in so far that the nature of a recovery of damages in an action, founded upon its breach, is as in tort, and the action is deemed as for a personal injury, and, consequently, does not survive the party injured. (*Thorn* v. *Knapp*, 42 N. Y. 474; *Wade* v. *Kalbfleisch*, 58 id. 282.) And while a right of action for a personal injury may not be within the definition, as frequently given, of a chose in action, that term in its broadest sense does embrace it. (*People* v. *Tioga C. P.*, 19 Wend. 73, 74; *Berger* v. *Jacobs*, 21 Mich. 215; *C. B. & Q. R. R. Co.* v. *Dunn*, 52 Ill. 260; 4 Am. R. 606; 3 Am. and Eng. Encyl. of Law, tit. Chose in Action.)

I concur in the result of the opinion of Judge VANN, and in his view that a cause of action arises against a party who effectually and wrongfully entices a husband to abandon his wife, and that at common law its availability to her was denied by reason of the disability of the wife to seek redress by action or take the benefit of it. The cause involves the misconduct of the husband, and there is no propriety in permitting him to join with his wife in prosecuting an action for such cause and to realize a pecuniary benefit as the result of his own wrong. The cause of action is the wrongful deprivation of the plaintiff of that to which she is entitled by virtue of the marital relation. It arises from the denial to her of that which the marriage contract gave her, and which she unmolested, had the right to have and enjoy. The conjugal society of the parties to it is an essential requirement of such a contract and relation. And when that due from the husband is wrongfully taken from her, the consequences are her loss and hers alone. The plaintiff's right to the chose in action, springing from the defendant's act, which produced such loss to her, was derived from the marriage contract. It belonged to her, was her property. And since she is permitted, by statute, to have and assert proprietary rights, independently of her husband, and as provided by the section of the Code before mentioned, to alone and for her benefit prosecute actions,

there seems to be nothing in the way of the plaintiff's right to maintain this action.

The judgment should be affirmed.

All concur except HAIGHT and PARKER, JJ., dissenting, and FOLLETT, Ch. J., not sitting.

Judgment affirmed.