MARGARET T. ELDREDGE, Respondent, *v.* ANNE E. ELDREDGE and Another, Appellants, Impleaded with HALLAM ELDREDGE, Defendant.

*A wife's damages for the loss of her husband's society, etc.— proof of acts of the husband and the defendants prior to his marriage — inadmissible evidence, presumed to have influenced the verdict, although the judge directed otherwise.*

To enable a wife to maintain an action to recover damages for the loss of the society, affections and companionship of her husband, it is incumbent upon her to show that the defendants in such action wrongfully persuaded and enticed him from her, and thus deprived her of his society by means of their tortious acts.

*Semble*, that in an action brought by a wife to recover damages for the loss of her husband's society, affections and companionship proof of the acts of the husband and the defendants six months prior to the plaintiff's marriage is inadmissible in evidence.

When illegal evidence, properly excepted to, has been received upon the trial of an action, it must be shown that the verdict rendered therein was not affected thereby or the judgment will be reversed; and if the evidence may have affected the result the error cannot be disregarded. It does not follow that impressions obtained by a jury will have no effect upon their verdict because the judge in his charge directs the jury to disregard the evidence, erroneously admitted, which was calculated to produce such impression.

APPEAL by the defendants, Anne E. Eldredge and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Broome on the 25th day of November, 1892, upon the verdict of a jury rendered after a trial at the Broome Circuit, and also from an order entered in said clerk's office on the 18th day of October, 1893, denying the defendants' motion for a new trial made upon a case and exceptions, and vacating the order theretofore entered staying the plaintiff's proceedings.

Plaintiff in her complaint alleges that " the said defendants have schemed, concerted and acted together to separate plaintiff from her said husband ; to induce such husband not to live with plaintiff ; to alienate his affections from plaintiff and deprive her of his comfort, aid and society, and to alienate from her the affections of her said husband, and to deprive her of the benefits and enjoyments of his society." Also, that " the said defendants persuaded and induced plaintiff's said husband to abandon and separate from her and to live with the said defendants at their home, and there, without the consent of this plaintiff, and against her wishes, harbored her said husband and aided and abetted him in separating himself from this plaintiff ; that on or about the 11th day of August, 1891, the said James Eldredge abandoned the plaintiff and went to live with the said defendants, at whose home he has ever since been unlawfully entertained and harbored, and during all of which time the plaintiff was, and is still, deprived of his society, assistance and service." That " the said defendants unlawfully and wrongfully persuaded and induced plaintiff's husband to abandon and separate himself from her as aforesaid, and have alienated and deprived the plaintiff of the affections of her said husband, and have ever since unlawfully entertained and harbored, and are now unlawfully and wrongfully entertaining and harboring, her said husband."

The answers of the defendants admit the marriage of the plaintiff to James C. Eldredge on January 7, 1891, and contained denials of the complaint.

*Edward K. Clark*, for the appellants.

*Edmund O'Connor*, for the respondent.

HARDIN, P. J.:

Plaintiff, in 1887, became acquainted with James Eldredge, and received his attentions from time to time (which were interrupted for a period of about six months), and on the evening of January 7, 1891, she accompanied him to the residence of a clergyman in the city of Binghamton and they were married, and, on that evening, they separated, to some extent keeping their marriage a secret, she returning to her mother's house and he returning to his father's house; subsequently she disclosed her marriage to her mother, and, shortly after returning to his father's house, he disclosed the marriage to his father. Subsequently, and on the twenty-eighth day of January, the plaintiff and her husband went to live in rooms of the boarding house of Mrs. Goodenough in the city, where they remained until the sixteenth of March, when the husband made some arrangement to go south with a view of selling cigars, and upon his return he made an arrangement with a Mrs. Blish to board himself and wife, with whom they remained from the second of May until the fifth of June, when the plaintiff again returned to her mother's house and has remained there ever since, being visited occasionally by her husband.

In August the husband of the plaintiff went to Sumpter, where he had an aunt and where he had expectations of making a settlement in business, and remained there for several weeks. While he was thus absent this action was commenced on the 1st of September, 1891, against his father, mother and sister. Plaintiff's right of recovery is based upon the alleged loss of the society, affections and companionship of her husband (*Bennett* v. *Bennett*, 116 N. Y. 584), and to maintain the action it was incumbent upon her to show that the defendants had wrongfully persuaded and enticed him from her and thus deprived her of his society by means of their "tortious act." (*Heermance* v. *James*, 47 Barb. 120; *Jaynes* v. *Jaynes*, 39 Hun, 40; *Bennett* v. *Bennett*, 116 N. Y. 584.) For some time prior to the plaintiff's marriage the husband had been addicted to the use of intoxicating drinks; his health was very much impaired, and at times he was rendered entirely unfit for business, and the knowledge of such habits and the condition of health was communicated to the plaintiff and to her mother prior to the mar-

riage; his habits continued very objectionable, he, at intervals, being accustomed to the use of intoxicating drinks to an excess, which condition seemed to have continued to a greater or less extent down to the time of the commencement of this action. His habits were such that they seemed to have occasioned his father and mother and sister a great deal of trouble prior to the marriage, and occasioned them more or less annoyance and perplexities after the marriage was contracted, and doubtless the acts and conduct of the defendants were more or less influenced by the condition of his health and habits.

When Mrs. Shannon, mother of the plaintiff, was upon the stand, she said that prior to the marriage she used to meet these defendants occasionally " and they were always very nice to me;" thereupon the counsel for the plaintiff asked her this question: " Q. Since the marriage have you frequently met them ?" The answer was, " Yes, sir." This was objected to and received and an exception taken, and thereupon the plaintiff's counsel put the following question: " Q. How since the marriage when you met them ? A. They never notice me since the marriage." This was objected to as irrelevant, and the court remarked: " I will receive it as one of the facts in the case." An exception was taken. It is not apparent that this evidence was material to the issue presented by the plaintiff.

The plaintiff was allowed to give evidence of the power of attorney executed by James Eldredge to his mother on July 15, 1890, and also a deed executed by the mother to her husband, the father of James, on the 25th of July, 1890. Each of these papers were objected to as incompetent and inadmissible, and the objections were overruled and an exception taken. It is difficult to see how the acts of James and of his mother and father, transpiring in 1890, six months before his marriage with the plaintiff, tend to support the allegations of the complaint.

Thereafter the plaintiff offered in evidence the original complaint in an action brought by James, the husband, against these defendants and his uncle, who had created a trust in favor of the defendants. When this complaint was offered it was objected to as not competent, and as no proof of the facts stated in the papers. Thereupon the plaintiff's counsel observed: " I do not offer it as proof of the facts stated, but as proof that those claims were made to the respective parties." Thereupon the court

remarked : " I will receive it," and an exception was taken. After
that ruling the summons and complaint, which were verified by
James on the 18th of July, 1891, in the action of James C.
Eldredge against Hallam Eldredge, Anne E. Eldredge, Mary E.
Withington and James Eldredge, were received and read in evi-
dence. Upon an inspection of the complaint it is found to contain
many allegations that were calculated to affect the minds of the
jury upon the vital and critical question at issue between the parties
in this action. The respondent's counsel attempts to escape the
criticism upon that ruling by an assertion that " The court par-
ticularly cautioned the jury upon that question at defendants'
request." Upon turning to the charge of the learned judge upon
the subject, we find him saying, viz. : " A suit was commenced by
this young man to set aside the power of attorney and the deed
that his mother gave, and a complaint was made and signed by him
in that action, which has been read to you. Now, gentlemen, there
were a good many statements of facts in that action ; for instance, it
was stated therein that they had said to him that unless he left his wife
he could not have his property. Now, gentlemen, that statement is
not evidence to you in this case. It is a pity that it was read to
you, for the fear that it may influence you, and I charge you to
give no credit whatever to the statement. It was answered by the
sworn answer of the defendants that it was not true. If the plaintiff
wanted the benefit of the young man as to what his parents had
ever said to him, she should have put it before you by his sworn
evidence under oath and on the trial of this case. What he said
there, with no opportunity   *   *   *   to cross-examine him, with
no opportunity for you to look him in the face and see whether it
was true or false, has not the slightest effect, and nobody of good
judgment would consider it for a moment. Hence, I ask you to
disregard it entirely. All that pleading was for was to show the
fact that he had commenced a suit in which he made certain charges,
in which he claims certain things against his mother, and the reasons
that he claimed them, and the facts upon which he claimed them.
Perhaps they should not have been put before you, and I ask you to
disregard entirely anything you can remember of that complaint,
except the fact that there was such an action brought against the
parents."

In *Erben* v. *Lorillard* (19 N. Y. 302) GROVER, J., said : " When illegal evidence, properly excepted to, has been received during a trial it must be shown that the verdict was not affected by it, or the judgment will be reversed. If the evidence may have affected the verdict the error cannot be disregarded. \* \* \* It does not fol- low that impressions thus obtained will have no effect, although the judge directs them to disregard the evidence." This rule is reas- serted in *Wersebe* v. *Broadway & Seventh Ave. R. Co.* (1 Misc. Rep. 474), and several cases are there cited to the same effect. After the plaintiff had testified that she received a letter September 5, 1891, which her husband wrote and sent her from Sumpter, which contained a twenty-five dollar check, she was asked by her counsel, viz. : " For what purpose did you bring and show that letter to me ? [Objected to as immaterial, incompetent and calling for a con- clusion.]" The objection was overruled and an exception was taken, and the witness answered : "I thought it would be for my interest." Thereafter the plaintiff's counsel offered in evidence the letter of September 5, 1891, which was objected to as incompetent and imma- terial, and as irrelevant and hearsay, and not binding upon these defendants. The objections were overruled and an exception taken, and the letter written by the plaintiff's husband was read. There- after the plaintiff's counsel offered a replying letter, which had been prepared under his supervision and sent by the plaintiff to her hus- band, which bore date September 7, 1891, which letter contains many self-serving declarations and statements made by the plaintiff. Thereupon the plaintiff's counsel exhibited to the witness a letter of September tenth, and asked her if that was a letter which she received in reply to the one of the seventh ; she asserted that it was, and thereupon the letter of September tenth was received in evidence.

During the course of the trial the defendants gave consider- able evidence tending very strongly to negative the allegations of the complaint. The jury have disregarded that evidence and fol- lowed the testimony given by the plaintiff and her witnesses, and in effect found that the defendants wrongfully persuaded, influenced and induced an alienation of the affections of the husband of the plaintiff from her, and thus wrongfully deprived her of his society. With the conflict thus shown in the evidence we are not prepared to

say that the rulings which we have pointed out, and the evidence so received against the defendants' objections and exceptions, worked no harm to the defendants. We are of the opinion that the appellants are entitled to a new trial by reason of the errors in the rulings, to which reference has been made. (*Winsmore* v. *Greenbank*, Willes Rep. 577; *Boues* v. *Steffens*, 16 N. Y. Supp. 819.)

MARTIN and MERWIN, JJ., concurred.

Judgment and order reversed on the exceptions and a new trial ordered, with costs to abide the event.

