JOSEPHINE VAN OLINDA, Respondent, *v.* MARY B. HALL, Appellant.

*Husband and wife — damages for the alienation of a husband's affections, when excessive — effect of testimony as to conversations not denied.*

An action may be maintained by a married woman to recover damages against another woman for alienating the affections of the plaintiff's husband, enticing him away and depriving the plaintiff of his society. Such an action may be maintained, although the husband has continued to live with the plaintiff.

To maintain the action the plaintiff must show a wrongful and willful attempt on the part of the defendant to alienate the affections of the plaintiff's husband, or to entice him from her and deprive her of his society; that such attempt was successful, and that the plaintiff was not a consenting party thereto.

It is not enough to show that such an attempt was made by the defendant; it must also be shown that it was successful.

The basis of such an action is the loss of *consortium*, or the right of a wife to the conjugal society of her husband, but if it appear that the plaintiff did not desire the conjugal society of her husband, a verdict for the plaintiff for $2,000 for the loss thereof is excessive.

Where, upon the trial of an action, a witness testifies as to conversations had between the adverse party and another person, and such adverse party fails to contradict such testimony when called as a witness, it must be assumed that such witness stated such conversations correctly.

APPEAL by the defendant, Mary B. Hall, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Saratoga on the 15th day of February, 1895, upon the verdict of a jury, rendered after a trial at the Saratoga Circuit, and also from an order entered in said clerk's office on the 14th day of February, 1895, denying the defendant's motion for a new trial made upon the minutes.

*Will W. Smith* and *Winsor B. French*, for the appellant.

*George A. Swart* and *L. Varney*, for the respondent.

PUTNAM, J.:

This action was commenced on March 7, 1894, to recover damages against defendant for alienating the affections of the husband of the plaintiff, enticing him away, and depriving plaintiff of his society. The plaintiff recovered a judgment of $2,000 and defendant appeals.

That such an action may be maintained by a married woman is now well settled. (*Eldredge* v. *Eldredge,* 79 Hun, 511 ; *Manwarren* v. *Mason,* id. 592 ; *Bennett* v. *Bennett,* 116 N. Y. 584.)

It is held that such an action may be maintained for alienating the affections of the consort of a plaintiff, although such consort has continued to live with the party. (*Heermance* v. *James,* 47 Barb. 120.)

To maintain the action plaintiff was compelled on the trial to show a wrongful and willful attempt on the part of the defendant to alienate the affections of her husband, or to entice him from her, and deprive her of his society ; that such attempt was successful, and that plaintiff was not a consenting party.

We will not attempt any extended discussion of the evidence, but we have examined and considered it carefully, and we are of opinion that it was insufficient to support the verdict.

There is no proof whatever that when Mr. Van Olinda came to defendant's house in December, 1893, he came at her solicitation or request. Whatever evidence there is in the case on the subject shows that he came in search of employment, and that she gave him work at his solicitation. Nor is there any satisfactory evidence that while he was there she used any improper or other influence to keep him at her house, or to alienate him from his wife, or that there was any improper or wrongful relations between them. All the evidence in the case on that subject seems rather to show a contrary state of facts. It is shown that on February 14, 1894, the last day that Van Olinda lived in defendant's house while she remained at home, plaintiff called there and saw her husband and defendant ; that the interview was friendly ; plaintiff made no complaint of her husband's absence from home, or his relations with defendant.

Up to the time that defendant left her home in Saratoga Springs and went to St. Paul, Minn., there is no testimony in the case showing any wrongful act on the part of the defendant — any wrongful intercourse between her and Mr. Van Olinda, or any attempt on her part to entice him from his wife. After she left for St. Paul, it does not appear that she and Mr. Van Olinda ever met again except two or three times in Schenectady, where she saw him, as far as the evidence discloses, upon business and in the presence of the family with whom she was living.

While defendant was at St. Paul and other places in the west, and afterwards at North Adams, Mass., she wrote a number of letters to Mr. Van Olinda, and it is claimed that the admissions and statements contained in those letters are sufficient to uphold the verdict rendered by the jury.

The letters show a considerable intimacy between the parties; a strong desire on her part that Mr. Van Olinda should join her in the west and afterwards at North Adams, and one of the letters seems to suggest a proceeding for a divorce to be undertaken by him.

It regard to those letters, it should be remembered that defendant and Mr. Van Olinda were connected by marriage; that she was among strangers, in a western State, and might naturally desire the presence of Mr. Van Olinda, who was to be accompanied by her adopted daughter.

But assuming that the letters evince an intent on her part to entice Van Olinda from his wife or to alienate his affections, the evidence fails to show that defendant succeeded in her attempt. Van Olinda did not go west; he did not go to North Adams; he did not undertake any proceedings against his wife for a divorce; he never, after the letters, as far as the evidence discloses, met the defendant except on two or three occasions upon business and in the presence of the family with whom she was boarding. Therefore, there is no satisfactory evidence that by the letters in question defendant enticed Van Olinda from his wife.

Nor does the testimony sustain the contention of the plaintiff that the defendant alienated the affections of Van Olinda from the plaintiff. As we have seen, while Van Olinda and defendant were living in her house at Saratoga Springs, there is no evidence indicating any improper attempt on her part to estrange him from his wife or to show that she had succeeded in such attempt, if made. If her letters from the west and from North Adams indicated an attempt to alienate the husband from his wife, the evidence does not show that the attempt succeeded. We have no letters from Mr. Van Olinda to the defendant in evidence. We are not shown the state of his feelings towards the defendant or his wife. It does not appear that there was any change in his feelings in regard to the plaintiff. The evidence in the case hereinafter referred to indicates that prior

to this time the relations between the plaintiff and her husband were not what they should have been. Whether those relations were at all changed in consequence of the letters of defendant or her influence the evidence does not disclose. As we have seen, plaintiff was bound not only to show the wrongful attempt of defendant to alienate Van Olinda and entice him from the plaintiff, but that such attempt had succeeded. The letters of defendant may show the unlawful attempt on her part to influence Van Olinda, but plaintiff fails to show by satisfactory evidence that defendant was successful in such attempt.

We are also of the opinion that the court should have granted defendant's motion for a new trial on the ground that the damages were excessive.

As above mentioned, when the plaintiff called at defendant's house on February 14, 1894, and found her husband there with defendant, it is not claimed that she made any complaint whatever. Nor is there any evidence that at any time before the commencement of the action she complained of her husband's absence or requested him to return home, or to leave the house of Mrs. Hall, or that she remonstrated with defendant. The witness Goodrich testified that in a conversation with the plaintiff in 1893 the latter said she " expected to get some money from her brother, and that she expected to buy a home and settle down and make Mr. Van shift for himself, as she would not support him any longer. Q. Did she say anything at the time about whether he provided for her? A. She always found fault about that; that has been the principal thing all through." The witness Stephenson testified that she had a conversation with the plaintiff when Mr. Van Olinda was at Saratoga. " She said she would just as soon he would be away as at home." " That he didn't provide for the family." After these witnesses had been sworn plaintiff was called to testify, and did not contradict their evidence, and hence we must assume that they stated the conversations correctly.

The testimony above quoted and the other evidence in the case indicates that Mr. Van Olinda did not provide for his family. That the plaintiff was not anxious for his presence at home. It is held that the basis of such an action as this is the loss of *consortium*, or

the right of the wife to the conjugal society of her husband. (*Bennett* v. *Bennett, supra,* 587.)

We think, therefore, that a verdict for $2,000 for the loss of the conjugal society of Mr. Van Olinda, which the evidence in the case shows plaintiff did not desire, was excessive in amount.

The judgment should be reversed and a new trial granted, costs to abide the event.

MAYHAM, P. J., and HERRICK, J., concurred.

Judgment reversed and a new trial granted, costs to abide the event.