## Rodriguez Estate

*Thomas Z. Minehart*, for petitioner.

SHOYER, J., April 20, 1956.—This petition for appointment of an ancillary guardian for the estate of an alleged incompetent was filed under section 301(*b*) of the Incompetents' Estates Act of June 28, 1951, P. L. 612, 50 PS §1681(*b*), and referred to me for a hearing. The petitioner is the wife of the alleged incompetent. Both she and her husband are, and have been for many years, domiciled in the State of New

York. At the hearing it developed that Jose J. Rodriguez, the alleged incompetent, is at present a patient in the Staten Island Hospital, Staten Island, New York, where he has been in a comatose condition since his transfer from Jefferson Hospital, Philadelphia, on August 16, 1954. He is suffering from brain injury sustained in an automobile accident which occurred in Philadelphia on May 14, 1954. It is alleged that Jose, while on shore leave from his employment as steward on a vessel tied up at the port of Philadelphia, was struck and injured by an automobile driven by one John B. Wade, a resident of this city, against whom a civil action for damages has been brought in the District Court of the United States for the Eastern District of Pennsylvania, being civil action no. 19317.

On June 28, 1955, petitioner was appointed committee of the said Jose J. Rodriguez by the Supreme Court of the State of New York. An exemplified copy of this appointment, together with the entry of the required bond, was placed in evidence at the hearing.

The petitioner was the sole witness before me, but she testified to the frequent visits that she has made to the side of her husband's hospital bed and of his total inability to communicate with her since she first located him in the Jefferson Hospital in Philadelphia. During the intervening months he has been fed by liquids administered through a tube inserted in his nose and his breathing has been facilitated by the surgical perforation of his windpipe and the insertion of a breathing device. He is totally unable to manage his property, and hence is an incompetent as defined in the act.

Section 301(b) of the Incompetents' Estates Act is as follows:

"(b) Nonresident. The court may find a person not domiciled in the Commonwealth having property in

the Commonwealth to be incompetent and may appoint a guardian of his estate. The appointment may be made after petition, hearing and notice as in the case of a person domiciled in the Commonwealth, or upon the submission of an exemplified copy of a decree establishing his incompetency in another jurisdiction. The court shall give preference in its appointment to the foreign guardian of the nonresident incompetent unless it finds that such appointment will not be for the best interests of the incompetent."

It will be seen that petitioner has complied with the act so far as the presentation of the petition and the introduction in evidence of an exemplified copy of the decree establishing the incompetency of Jose as already adjudicated in New York, the State of his domicile. Said exemplified record reveals the appointment of petitioner as "foreign guardian" or "committee" of the nonresident incompetent. From his interrogation of the wife petitioner on the witness stand, the hearing judge is satisfied that she is devoted to her husband, and her appointment as ancillary guardian would serve his interests well. The act directs the court to give her preference in appointing the ancillary guardian, and no reason appears why it would not be to the best interests of her husband to have her named rather than someone else.

A question remains to be considered, however, as to whether or not the nonresident has "property" in the Commonwealth within the meaning and purpose of the statute conferring jurisdiction upon this court. The answer will depend on the construction to be given to the word "property" as used in this act. In the A. L. I. Restatement of the Law of Property, chapter 1, p. 3, we read in the introductory note that: "The word 'property' is used sometimes to denote the thing with respect to which legal relations between persons exist and sometimes to denote the legal relations. . . . The

thing may be an object having physical existence or it may be any kind of an intangible such as a patent right or a chose in action."

A chose in action, or the right of bringing an action, is personal property: "Property", 73 C. J. S. 175, §9, and the term, as now used, is broad enough to include a right of action arising out of tort such as an injury to the person: Wilson v. Brown, 106 F. Supp. 500; Redfern v. Collins, 113 F. Supp. 892; Bennett v. Bennett, 116 N. Y. 584, 23 N. E. 17; Garrett v. Reno Oil Co. (Tex. Civ. App.), 271 S. W. 2d 764; Carver v. Ferguson (Cal.), 254 Pac. 2d 44; Cincinnati v. Hafer, 49 Ohio 60, 30 N. E. 197.

A further question arises under §302(b), 50 PS §1682(b), as to whether or not the "assets" of Jose are located in this county. A cause of action is said to have three stages, (1) institution, (2) pendency, and (3) determination. There is a suit now pending in the United States District Court sitting in Philadelphia and docketed as civil action no. 19317, so that it may be accurately stated that the court is here concerned with something more than a mere choose in action, namely, a lis pendens, and that this suit having been commenced in the only county where suit properly could have been commenced, viz., Philadelphia, Jose now has an asset located here. "Asset" is a broader word than "property".

" 'Whatever may have been the definition affixed to the term "assets" in the earlier history of the law, it means, in modern usage, as applied to decedent's estate, property, real or personal, tangible or intangible, legal or equitable, which can be made available for, or may be apportioned to, the payment of debts . . . "In an accurate and legal sense", says Justice Story, "all the personal property of the deceased, which is of a salable nature, and may be converted

into ready money, is deemed assets. But the word is not confined to such property; for all other property of the deceased which is chargeable with his debts and legacies, and is applicable to that purpose, is, in a large sense, assets." Story's Eq. Jur. §531; Marvin v. Marysville St. R. & T. Co. (CC), 49 Fed. 436, 437; Wilson v. Tootle (CC), 55 Fed. 211, 213.'" Condo v. Barbour, 101 Ind. App. 483, 489. Undoubtedly the legislature changed from the word "property" in section 301(*b*) to the word "asset" in section 302-(*b*) for a purpose, and the hearing judge deems this an expression of the legislative will that the court should construe the word "property" so as to give broadest scope to the court's jurisdiction in carrying out the spirit of the act. In Card Appeal, 177 Pa. Superior Ct. 502, Judge Wright, in approving the appointment of an ancillary guardian, referred to the incompetent's property in this State as "assets", page 506. If there were any doubt about this court's authority, it would be resolved in favor of the appointment because the purpose of the statute is "preventive and protective in nature": Sigel Estate, 169 Pa. Superior Ct. 425, 429; Card Estate, supra, p. 506.

In Deceder Estate, 73 D. & C. 373, it was held that the court had authority to appoint a guardian to recover the property of an alleged incompetent in a situation where he had previously deprived himself of all his property by an allegedly improvident grant.

In Wentz's Appeal, 76 Conn. 405, 409, where again an objection was raised that the alleged incompetent had no property in the jurisdiction, it was said: "He has affairs to be managed. A right of action is property, within the meaning of this statute. If it were not, it would always be easy to strip those of their means who are incapable of protecting themselves. A right of action to reclaim title to land in this State is property in this State; . . ."

Petitioner seeks the present appointment of an ancillary guardian because, the hearing judge was told, counsel for defendant in the negligence suit insists that his client be compelled to defend but once and that against a plaintiff who shall be cloaked with full authority to sue. Otherwise defendant might be subjected to a double liability. The Incompetents' Estates Act in §§401, 701, 50 PS §§1781, 1981, gives a guardian (including an ancillary guardian) authority to "maintain . . . any action", and this without loss of the diversity requisite in the Federal court: Fallat v. Gouran, 220 F. 2d 325 (C. C. A. 3rd, 1955). It would seem that this is as much a desideratum for granting the petition as would be the appearance before the court of Jefferson Hospital, a citizen of this State, seeking protection of its claim by the appointment here of an ancillary guardian. While Jefferson is not on this record, the hospital has presented petitioner with a bill for Jose's care of approximately $1,500, and her knowledge of the existence of this claim has precluded petitioner from proceeding under §701 (2), 50 PS §1981 (2), of the act. Granting of this petition will insure proper consideration of the hospital's claim before any damages recovered in the negligence suit are removed out of this jurisdiction.

For the above reasons, the hearing judge enters the following

## Decree

And now, April 20, 1956, it is ordered and decreed that Jose J. Rodriguez is adjudged an incompetent, and Mercedes Rodriguez is appointed ancillary guardian of the estate of Jose J. Rodriguez; said ancillary guardian is directed to file an inventory in accordance with the provisions of section 402 of the Incompetents' Estates Act of 1951; no money or property of the incompetent to come into the said guardian's possession, either as ancillary or domiciliary guardian,

without security first being entered in accordance with further order of this court.