## BUCHANAN v. FOSTER.

(Supreme Court, Appellate Division, First Department.    December 31, 1897.)

1. ALIENATING HUSBAND'S AFFECTIONS.

In order to support an action by a wife to recover damages for the alienation of the affections of her husband, it must be established that the defendant has wrongfully induced the husband to abandon his wife.

2. SAME—EVIDENCE.

It seems that, in such an action, mere proof that the husband has abandoned his wife, and that during the abandonment he maintains improper relations with the defendant, is insufficient to warrant a recovery.

3. PRESUMPTIONS—FAILURE TO INTRODUCE EVIDENCE.

Unless a plaintiff makes out, at the trial, a prima facie case, the defendant is not required to introduce any proof, and his failure to do so cannot be relied on by plaintiff to establish his cause of action.

4. EVIDENCE—DECLARATIONS.

In an action for alienating a husband's affections, his declarations, not made in the presence of defendant, are inadmissible against her.

Appeal from trial term.

Action by Margaret P. Buchanan against Kate M. Foster. From a judgment entered on a verdict, and from an order denying a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

E. C. James, for appellant.

B. F. Tracy, for respondent.

VAN BRUNT, P. J.    This action was brought to recover damages for the alienation of the affections of the plaintiff's husband, and inducing him to desert the plaintiff. The allegation of the complaint is that the defendant, with intent to obtain money and derive support and maintenance from the plaintiff's husband, and with the intent to injure the plaintiff, and to deprive her of the society, comfort, and aid of her said husband, by all methods, manners, and means within her power strove to alienate the affections of said husband from the plaintiff, and induce him to leave the plaintiff and reside with her. The complaint further alleges that with the intent, and for the purposes aforesaid, the defendant strove to obtain, and did obtain, a controlling influence over the plaintiff's husband, and succeeded in inducing him to illtreat and neglect the plaintiff, and to purchase various pieces of real property of 'great value, and to purchase and provide expensive furniture, wearing apparel, etc., for

the defendant; and that the property and money so obtained from the plaintiff's husband by the defendant, and so expended in her behalf, amounted, as plaintiff was informed and believed, to the sum of $100,000. The complaint further alleges that the defendant, with the intent and for the purposes, and exercising the influence, aforesaid, induced the plaintiff's husband to treat her in a cruel and inhuman manner, to threaten her with violence, and to conduct himself towards her with uniform brutality, and finally, on or about August 24, 1887, to desert the plaintiff; and that since said date the plaintiff's husband had resided with the defendant, against the consent of the plaintiff, and in opposition to her utmost peaceable efforts to obtain him from the defendant's custody, and to enable her to live with him as his wife. The answer of the defendant is substantially a general denial. Upon the trial of the case a large amount of evidence was introduced, showing the relation between the plaintiff and her husband, and showing certain intercourse and transactions between the plaintiff's husband and the defendant, from which it is claimed that the allegations of the complaint were established.

It seems to be important, before treating of the evidence that has been introduced, that we should consider the nature of the action, and the facts necessary for the plaintiff to establish in order to maintain the same. It is claimed upon the part of the respondent that when the wife has shown that the husband has abandoned her and remains away from her, and during the period of such abandonment maintains improper relations with a woman, it will ordinarily be a question for the jury to determine whether the meretricious favors accorded by the mistress are not the inducing cause of the desertion of the wife. And this seems to be stated as a rule in the case of Romaine v. Decker, 11 App. Div. 20, 43 N. Y. Supp. 79. But an examination of that case shows that this was a mere dictum, contrary to the uniform course of authority. The decision of the court was, however, in accordance with authority, because there was much other evidence in the case cited tending to show active interference upon the part of the defendant in separating the husband and the wife, and inducing the husband to remain with her. The rule as laid down by the authorities seems to be that the basis or gist of the action is the loss of consortium, and not merely the loss of assistance; and that, in order to maintain the action, it must be established that the defendant has wrongfully induced the husband to abandon his wife. Bennett v. Bennett, 116 N. Y. 584, 23 N. E. 17; Van Olinda v. Hall, 88 Hun, 452, 34 N. Y. Supp. 777; Eldredge v. Eldredge, 79 Hun, 511, 29 N. Y. Supp. 941; Warner v. Miller, 17 Abb. N. C. 221; Churchill v. Lewis, Id. 226. And other cases might be cited. The mere fact that the husband maintains improper relations with the defendant, and remains away from his family, does not seem to be sufficient to support the action. There must be some active interference upon the part of the defendant. The fact that a woman is attractive and submissive is not sufficient. There must be some evidence from which the conclusion can be drawn that she was the pursuer, and not merely the pursued. That such was

the nature of the proof considered necessary to be established at the time of the drawing of the complaint in this action is evidenced by its allegations. Throughout the whole of the complaint the active efforts of the defendant for the purpose of alienating the affections of the husband and inducing him to illtreat his family, and for the purpose of obtaining possession of his property, are alleged. There is no proof whatever contained in the record to support these allegations. The most that can be deduced from the evidence offered upon the trial (much of which was entirely improper and incompetent) is that Dr. Buchanan did leave his family, and did associate with the defendant. But there is no evidence from which a jury would be authorized to find that any criminal intercourse existed between them prior to the time of the commencement of this action.

It must be borne in mind, in considering the evidence, that the charges which were made, and which it was necessary to prove, as against the defendant, involved moral turpitude; and no presumptions of guilt are to be indulged in unless the facts shown are inconsistent with innocence. It is a familiar principle that in all actions of fraud, where two inferences may be drawn from the evidence, the court and jury are bound to draw the inference of innocence. So, in the case at bar, even though the proof were of such a character that an inference of wrongdoing might be drawn, yet, if the evidence was consistent with innocence, we would be bound to find that such innocence existed. An examination of the evidence fails to show any interference upon the part of the defendant whereby Dr. Buchanan was induced to leave his family, or associate with her; and there is not a particle of proof of any illicit intercourse between them prior to the commencement of this action. The mere fact of association cannot of itself form the basis of a finding of illicit intercourse. It is true that upon the occasion of the defendant's going to Europe in July, 1888, there is testimony that when the doctor was bidding her good-bye, she threw her arms around his neck, and said, "For God's sake, don't let any one take you away from me." This was nearly a year after he had left his family, and is the first instance of any familiarity between them; and clearly this, of itself, is entirely insufficient to support the charge of inducement which it was necessary that the plaintiff should make out. Notwithstanding the fact that the doctor for a considerable length of time occupied an office in the defendant's house, and upon the same floor on which she lived, there is no evidence of any undue or improper familiarities. The witness Annie Anderson, who lived for some 10 months with the defendant in 1889, once saw the doctor in Mrs. Foster's room, when she had her waist off, no part of her person being exposed. The door of the room was open. The doctor was standing up, talking to the defendant. This witness also testified that the doctor and Mrs. Foster went out evenings together, but that they always returned early; and that they had champagne suppers in the house; but there is no evidence that he ever stayed there at night at all. There was evidence also that he visited her at her cottage

at Asbury Park in 1889; and that in 1893, the plaintiff, from her residence in West Thirtieth street, watched her husband in his house opposite, and saw him on one occasion kiss the defendant in the hall, with the front door open; and there was further evidence that he and the defendant went out riding together.    But there was not a particle of proof tending to show undue familiarities, except in an extremely few instances, and they are wholly insufficient to establish the charge of illicit intercourse.    It is true that after the doctor's death, which occurred in September, 1896 (this action being commenced in 1891), it is claimed the defendant, in 1897, made admissions as to her affection for him, and that she had had a child by him, from which it might be inferred that at some time they may have had illicit intercourse, which might possibly have occurred shortly before or subsequently to the commencement of this action. But there was nothing tending to show any effort on the part of the defendant to keep the doctor from his family, or that his whole conduct was not his own voluntary act, uninfluenced by any active interference on her part.    Many things may be surmised and imagined in regard to the relations between the plaintiff's husband and the defendant, but it requires something more than this to establish such a cause of action as the one at bar.    There must be some evidence which must lead to the conclusion that the defendant is the procuring cause of the abandonment, and which is inconsistent with the conclusion that such abandonment resulted solely from the will and wishes of the husband.

It seems to be assumed that, because the defendant did not go upon the stand to deny imputations which were not supported by proof, therefore she is presumed to be guilty.    But we are not aware of any rule of evidence which compels a defendant to introduce proof upon a trial in which the plaintiff has failed to establish a cause of action, or that a cause of action can be established because the defendant fails to offer testimony to refute that which has not been proven.    It has been impossible to review all the evidence offered in this action within the limited space of this opinion, and it has only been thought necessary to advert in the briefest manner to those features which seem to have been considered by the plaintiff as the most salient.    It seems to us that during the progress of the trial very grave errors were committed in regard to the admission of testimony.    A very large part of the evidence as to the quarrels and bickering of the plaintiff and her husband was entirely irrelevant and inadmissible.    While it is undoubtedly true that, where an act is proper to be proven as part of the res gestæ, the declarations accompanying that act may be offered in evidence for the purpose of characterizing the act, even though made in the absence of the defendant, yet such declaration is no proof of the fact declared as against the defendant, independent of competent evidence for its establishment.    All through the trial of this case it would seem to have been the idea which guided the admission of evidence that Dr. Buchanan was also on trial, and that his declarations were evidence against the defendant.    It is clear that a cause of action against

the defendant cannot be made out by the declarations of Dr. Buchanan. The rules of evidence governing the admission of declarations of co-conspirators have no application to actions of this character; and, although proof generally of the relations of the doctor and his family may have been competent upon the question of the measure of damages, yet the details of the quarrels and disagreements of the plaintiff and her husband, and declarations which in no way characterized any of the acts of the doctor having relation to the defendant, do not seem to have been competent. So in regard to the evidence as to the doctor's will. It is difficult to see upon what theory that will was introduced. The defendant was not present at its execution. At that time, and also at the time of his death, she was absent from the country. There is no evidence whatever that she in the slightest degree influenced the making of the will, and still it is introduced as though she had been an active participant in its construction. Evidence of this character could not be otherwise than injurious to the defendant, and, if there were no other reasons, a new trial would have to be ordered upon this ground alone. We think the whole case was tried upon an erroneous theory. Instead of the plaintiff being required to establish the facts necessary to constitute the cause of action alleged in the complaint, it seems to have been assumed that it was the duty of the defendant to disprove the charges made against her, simply because she was shown to have had the opportunity to do the things charged, no evidence being offered to show that she had availed herself of such opportunity.

The judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

BARRETT, RUMSEY, and INGRAHAM, JJ., concur. O'BRIEN, J., concurs in the result on the ground of errors in rulings on evidence adverted to in opinion.