[Civ. No. 1410.   First Appellate District.—December 1, 1914.]

ELLEN M. FERNANDEZ, formerly Ellen M. Brodies, Respondent, v. JAMES ALVA WATT, Defendant, Cross-Complainant, and Appellant; and WATSONVILLE REALTY COMPANY (a Corporation), Appellant.

ACTION TO RECOVER CORPORATE STOCK—CLAIM OF LIEN FOR ATTORNEY'S FEES—OWNERSHIP OF STOCK—CONFLICT IN FINDINGS—IMMATERIALITY OF.—In an action brought against an attorney to compel the delivery to plaintiff of certain corporate stock and for an accounting of the dividends received by defendant upon the stock, upon the payment by plaintiff to defendant of such sum of money as the court may find to be due him, although the findings in relation to plaintiff's ownership of the stock were in a measure conflicting,

where the plaintiff's ownership of the stock was an admitted fact in the case, the conflicting findings were wholly unnecessary, and therefore immaterial to the issues involved in the case.

Id.—Admitted Facts—Findings on Unnecessary.—Findings upon admitted facts are not required and the judgment will not be disturbed because of a real or apparent conflict in such findings.

Id.—Evidence—Credibility of Witnesses—Matter for Trial Court—Conflicting Evidence.—The credibility of witnesses and the weight of the entire evidence are matters to be determined by the trial court in the first instance upon the trial of the case, and finally upon the hearing and determination of a motion for a new trial; and where there is evidence sufficient to sustain the findings, and there is a substantial conflict in the evidence as a whole, the findings will not be disturbed on appeal.

Id.—Character of Witness.—As a general rule, evidence is not admissible to show the good character or reputation for truth and veracity of a witness whose character has not been attacked and whose testimony has not been impeached; but this rule has no application to the testimony of a witness to the effect that he had at one time prior to the trial of the present action employed a witness, whose deposition was introduced in evidence, as an attorney at law to look up and pass upon certain legal matters, and that the latter had handled the matters with ordinary skill and at all times conducted himself as a rational and well-balanced gentleman; and there was no substantial error in the admission of such testimony, where it was provoked by and offered in rebuttal of the testimony of the defendant, who, when testifying in his own behalf, declared that in his dealings with the witness in questions concerning the transaction in suit the latter manifested erratic symptoms and seemed incapable of understanding ordinary transactions and generally did not deport himself as if he were a person of character and responsibility.

Id.—Power of Attorney.—In such a case there was no error in admitting testimony of one of the attorneys for plaintiff to the effect that he had exhibited a power of attorney from the plaintiff at his first interview with the defendant, although the power of attorney was not offered in evidence, where the defendant in a subsequent interview with the attorney and in all of the correspondence referred to, recognized and treated with the attorney as the duly authorized attorney at law and in fact of the plaintiff.

Id.—Written Contract—Parol Evidence.—In such a case even if parol evidence were admitted to vary the contents of a written agreement the result was harmless where the agreement itself was finally admitted in evidence.

Id.—Conclusion of Witness—Harmless Error.—In such a case, there was no prejudicial error in allowing the question asked of plaintiff, "Do you owe the defendant anything for services rendered in connection with the estate of James Brodies?" which was objected

to on the ground that it called for a conclusion of the witness, where the plaintiff later testified, without objection, that all of the professional services rendered to her by defendant had been paid for in full.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. J. J. Trabucco, Judge presiding.

The facts are stated in the opinion of the court.

John F. Clute, James Alva Watt, and Wyckoff & Gardner, for Appellants.

T. C. Judkins, and S. W. Molkenbuhr, for Respondent.

THE COURT.—This action comes to this court upon an order of transfer from the supreme court. The plaintiff's complaint alleges substantially that she was the owner of thirty-six shares of the capital stock of the Watsonville Realty Company (a corporation), which, upon March 24, 1905, and ever since were held in trust for her by the defendant, James Alva Watt, an attorney at law. Watt, at the time of the commencement of the action, so the complaint alleged, claimed the right to hold the stock in controversy as security for the payment of an indebtedness due him for professional services alleged to have been rendered to the plaintiff. The plaintiff prayed for an accounting of the dividends, paid on the stock in controversy, and alleged to have been retained by the defendant, Watt, and for a judgment directing the delivery of the stock to her by the defendant "upon the payment to him of such sum of money as may be determined by the court . . . to be due and payable" to him. The defendant Watt, in his answer and cross-complaint, admitted his possession of the stock, and admitted the plaintiff's title thereto, but alleged a prior agreement with the plaintiff whereby he was employed as her attorney, under the terms of which he had rendered her professional services of the reasonable value of $1621.60, in several transactions which culminated in prolonged litigation, and then pleaded the pledge of the stock to him by the plaintiff as security for the payment of the sums alleged to be due him for professional services, together with advancements and disbursements made by him during the litigation, in

which the plaintiff became involved, in the sum of $292.10. The defendant prayed for a judgment for the sums claimed to be due him, and that, after crediting the amount of dividends on the stock admitted to have been received and retained by him, a decree be made foreclosing his lien upon the stock and directing a sale thereof to satisfy his claim.

The trial court found that the defendant received and held the stock in trust for the plaintiff; that he had collected the sum of one thousand four hundred and four dollars as dividends thereon; that he had rendered professional services to the plaintiff which were reasonably worth only the sum of four hundred dollars; and that he in the rendition of such services had expended in the plaintiff's behalf only the sum of one hundred dollars. Thereupon judgment was entered in favor of the plaintiff for the recovery of the stock and the sum of nine hundred and four dollars, which sum represented the difference between the dividends due to the plaintiff and collected and retained by the defendant on the stock and the sum found to be due him for professional services and advances made. Judgment was also rendered in favor of the plaintiff and against the defendant Watsonville Realty Company in the sum of one hundred and forty-four dollars for a dividend declared to be due and payable on the stock which the court found had not been paid to plaintiff by the corporation defendant nor collected by the defendant Watt. The judgment against the corporation defendant is not assailed; but it is insisted upon behalf of the defendant Watt that the judgment as to him should be reversed, because of errors of law occurring during the trial, and the alleged insufficiency of the evidence to support the findings of the trial court. Incidentally, it is insisted that certain findings are conflicting and contradictory, and that therefore the judgment should be reversed. With reference to the last point, it may be conceded that the findings referred to, which relate to the plaintiff's ownership of the stock, are in a measure conflicting, but inasmuch as the plaintiff's ownership of the stock was an admitted fact in the case, it is obvious that the claimed conflicting findings were wholly unnecessary, and therefore immaterial to the issues involved in the case. It needs no citation of authority to support the proposition that findings upon admitted facts are not required, and that a judgment will not be disturbed because of a real

or apparent conflict in such findings. The argument made in support of the contention that the material findings in favor of the plaintiff upon the subject of the value of the services rendered by the defendant are not supported by the evidence is devoted chiefly to a discussion of the credibility of the plaintiff as a witness in her own behalf, and the weight of the evidence generally adduced upon this phase of the case. The credibility of the witness and the weight of the entire evidence were matters to be determined by the lower court in the first instance upon the trial of the case, and finally upon the hearing and determination of a motion for a new trial. Our examination of the record convinces us that there is some evidence sufficient to sustain the findings complained of, and that the evidence as a whole is in substantial conflict in so far as it relates to the issue of the value of the defendant's services. This being so, the judgment cannot, under the well-settled and generally well-understood rule, be disturbed by this court upon the ground that the evidence is not sufficient to support the findings and judgment. If our examination of the record had convinced us that the findings complained of were not as a matter of law supported by sufficient or any evidence, we would deem it our duty to narrate in substance and discuss in detail the evidence relied upon by the plaintiff to support the findings and judgment; but in view of our conclusion, after a full examination of the record, that there exists a substantial conflict in the evidence offered and received in response to the issue of the value of the defendant's services, no useful purpose would be subserved by narrating all of such evidence and then in detail demonstrating its conflict.

In support of the assertion that there is some evidence to support the finding of the court upon the issue of the value of the defendant's services, it will suffice to say that the record shows that on June 8, 1907, the defendant Watt sent to the plaintiff, Mrs. Brodies, a statement of account showing a balance due to him for professional services and money expended in the sum of $344.30. Subsequently, in May of the following year, attorney Brueggerhoff of Austin, Texas, called upon the defendant Watt and exhibited a power of attorney from Mrs. Brodies, which authorized Brueggerhoff to receive the stock in controversy from the defendant Watt and negotiate a settlement of the latter's claim for professional services. Shortly thereafter Watt, recognizing the existence of the relation of

attorney and client existing between Mrs. Brodies and Brueg-
gerhoff, wrote to the latter, inclosing another statement of
account, which showed a balance due to Watt in the sum of
$331.50.   In response to this statement Watt received a letter
from Brueggerhoff requesting that the stock be forwarded to
him, together with a draft upon Mrs. Brodies for the amount
of Watt's bill.   This letter from Brueggerhoff, written at the
instance of and upon behalf of Mrs. Brodies, indicated clearly
enough her desire to terminate the relation of attorney and
client existing between her and Watt.   The letter last referred
to was dated June 22, 1908, and referred to Watt's letter of
June, 1907.   In September, 1908, another letter from Brueg-
gerhoff was addressed to and received by Watt, asking that
Watt draw upon Mrs. Brodies for the amount of his claim as
rendered in his previous statement; and thereupon Watt in
reply on September 17, 1908, mailed another statement to
Brueggerhoff, showing a balance due of $409.60.   These state-
ments and correspondence were undoubtedly evidence of the
condition of the account between Mrs. Brodies and Watt as
understood by the latter in September, 1908.   Subsequently,
however, on April 1, 1909, Watt rendered another statement
of account, showing a balance due of $759, to a Mr. Judkins,
an attorney at law who had become associated with Mr. Brueg-
gerhoff in the transaction, and who had called upon Watt at
the instance of Mrs. Brodies.   Shortly thereafter the plain-
tiff brought the action to compel a delivery of the stock; and
when issue was joined Watt's claim had advanced to the sum
of $1913.70.   We think it clearly appears from all of the
statements rendered by Watt, considered in connection with
other evidence, that at least seventy-five per cent of his claim
was based upon expenses incurred and services rendered after
he had been repeatedly, fully, and finally informed that his
services were no longer needed by the plaintiff, and after she
had repeatedly offered to pay the amount of his claim which,
at the time of his dismissal, did not exceed, as evidenced by
his own statement, the sum of $409.60.   That there was a
very material conflict in the evidence with reference to the
propriety of the charges made in the several accounts rendered
by Mr. Watt for his *per diem* and expenses of trips to Watson-
ville for the claimed purpose of attending meetings of the
corporation in which plaintiff was a stockholder, is evidenced
by the records of the corporation, which show that upon sev-

eral of the occasions charged for no meeting of the corporation was held, or if held, the defendant was not present. One of the alleged errors of law relates to the ruling of the trial court admitting over the objection of the defendant Watt certain testimony of Mr. Judkins, one of the counsel for plaintiff, which, it is claimed, was offered and improperly received for the purpose of bolstering up the testimony of the witness Brueggerhoff, whose testimony, in deposition form, upon a certain phase of the case, it is claimed, was in conflict with the testimony of the defendant Watt. In this behalf it is the contention of the defendant Watt that the testimony complained of tended to show the good reputation of the witness Brueggerhoff for truth, honesty, and integrity, and therefore, by adding to the credibility of the witness, whose character in the particulars stated had not been previously assailed, gave his testimony greater weight with the trial court than it would otherwise have had. It may be conceded that as a general rule evidence is not admissible to show the good character or reputation for truth and veracity of a witness whose character has not been attacked and whose testimony has not been impeached; but in our opinion this rule has no application to the situation presented in the record before us. The testimony complained of was merely to the effect that Mr. Judkins had at one time prior to the trial of the present action employed the witness Brueggerhoff as an attorney at law to look up and pass upon certain legal matters in the state of Texas, and that he, Brueggerhoff, had handled these matters with ordinary skill and at all times conducted himself as a rational and well-balanced gentleman. This testimony was provoked by and offered in rebuttal of the testimony of the defendant Watt, who, when testifying in his own behalf, declared that in his dealings with Attorney Brueggerhoff concerning the transaction in suit, the latter manifested erratic symptoms and seemed incapable of understanding ordinary transactions, and generally did not deport himself as if he were a person of character and responsibility. In this view of the testimony we see no substantial error in the ruling of the court. While the fact that Watt's opinion as to the legal ability of Brueggerhoff was admitted in evidence without objection would not, in the presence of an objection from the defendant, warrant the introduction of material testimony in reply upon behalf of the plaintiff, nevertheless it is apparent that the testimony

complained of, although objectionable, was not intended to
show and did not, strictly speaking, have the effect of show-
ing the good reputation of Brueggerhoff for truth and ver-
acity. The most that it did was to rebut the opinion of the
defendant Watt to the effect that Brueggerhoff was not a
capable and clear-headed lawyer. Brueggerhoff's legal ability
and mentality, however, were never facts of any importance
one way or the other in the case, and did not, so far as we can
ascertain, from the record, ultimately enter as an essential in
the attempted adjustment of the defendant's claim. That
this is so is evidenced by the fact that in all of Watt's subse-
quent dealings with Brueggerhoff, which were conducted by
correspondence, the latter's professional ability was never
doubted or disputed. Moreover, we are unable to discern any
material conflict in the testimony of Watt and Brueggerhoff
as to what occurred when they first met to discuss Mrs.
Brodies' affairs; and therefore we cannot conceive how the
testimony complained of, although immaterial and objection-
able, could have weighed against the defendant in the mind
of the trial court.

We see no error in the ruling made over the objection of
the defendant admitting the testimony of Brueggerhoff to the
effect that he had exhibited a power of attorney from Mrs.
Brodies at his first interview with Watt, even though the
power of attorney was not offered in evidence. The error, if
any, in this behalf was harmless, for the reason that the de-
fendant Watt in a subsequent interview with Brueggerhoff
and in all of the correspondence referred to, recognized and
treated with Brueggerhoff as the duly authorized attorney at
law and in fact of Mrs. Brodies.

The two remaining assignments of error alleged to have
been committed by the trial court have no merit. It is not
apparent from our examination of the record that parol evi-
dence was admitted to vary the contents of the written agree-
ment of December 4, 1904; but even if this were so, the result
would be harmless in view of the fact that after some pre-
liminary testimony the agreement itself was finally admitted
in evidence. While objection was interposed to the question
put to the plaintiff ''Do you owe the defendant anything for
services rendered in connection with the state of James
Brodies?'' upon the ground that it called for the conclusion
of the witness, nevertheless no claim of prejudicial error can

be predicated upon the admission of the testimony elicited by the question, because the plaintiff later testified, and apparently without objection, that all of the professional services rendered to her by the defendant Watt had been paid for in full.

We are of the opinion that the evidence sustains the material findings of the lower court and that no prejudicial error appears in the conduct of the trial.

The judgment and order appealed from are affirmed.

A petition for a rehearing of this cause was denied by the district court of appeal on December 31, 1914, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 28, 1914.