[Civ. No. 1896.  Third Appellate District.—September 17, 1919.]

## CATHERINE M. DE BOCK, Respondent, v. AUGUST DE BOCK et al., Appellants.

[1] APPEAL—ALTERNATIVE METHOD—PRINTING OF RECORD IN BRIEF.— The legislature did not intend, by the enactment of section 953c of the Code of Civil Procedure, relating to the taking of appeals under the alternative method, that the appellant should be required to print in his brief all the testimony appearing in the record, or even all the testimony relating to the points urged by him for a reversal, but only such portions of the record as he desires "to call to the attention of the court."

[2] ALIENATION OF AFFECTIONS—ACTION FOR DAMAGES—SUFFICIENCY OF COMPLAINT.—In an action for damages for the alienation of the affections of the former husband of the plaintiff, the complaint is sufficient where in very plain and direct language it charges the formation of a conspiracy by the defendants having for its object the alienation from the plaintiff of the affections of her former husband and thereby to deprive her of his protection, assistance, and consortium, that such conspiracy was actually executed or carried out by the defendants, and that by reason of the wrongful acts of the latter the plaintiff lost the love and

---

2. Action by wife for alienation of affections, notes, 6 Ann. Cas. 661; 14 Ann. Cas. 47; Ann. Cas. 1912C, 1179; Ann. Cas. 1916C, 748; 4 L. R. A. (N. S.) 643; 29 L. R. A. (N. S.) 842; L. R. A. 1916A, 67.

affection and the consortium of her said former husband, although, in addition thereto, it contains some matters which are wholly immaterial to, and have no necessary connection with, the cause of action pleaded and which might properly be stricken from the complaint on motion.

[3] Id.—Cause of Estrangement — Contradiction of Matters in Previous Action for Divorce — Estoppel.—In such action the plaintiff is not estopped from denying certain facts alleged in her former complaint in a previous action against her husband for divorce with reference to the cause of the estrangement. The parties to the two actions are not the same, and the subject matter of the two actions is entirely and wholly different.

[4] Id.—Evidence—Former Divorce Complaint Admission Against Interest.—In such action for damages for alienation of the affections of the former husband of the plaintiff, the complaint in the action for divorce previously brought by the plaintiff against the husband can perform no other office than that of evidence of an admission upon the part of the plaintiff that the material facts stated in such divorce complaint, which was verified, were true. It is not, of course,. conclusive evidence of the truth of the facts so stated, and may be rebutted, but it constitutes an admission against interest which may, and should be, considered in the determination of the issues of fact in the subsequent action.

[5] Id.—Judgment—Sufficiency of Evidence.—In this action for damages for alienation of the affections of the former husband of plaintiff, the evidence, which was entirely of circumstances, while not legally sufficient to justify a verdict against the defendant to whom such former husband had transferred his love and affection, was sufficient to warrant a verdict against the other defendants, who were relatives of such former husband.

[6] Id.—Feelings of Husband and Wife Toward Each Other—Evidence of Conversations Admissible.—In such action, evidence of conversations between the husband and wife is admissible to indicate their feelings toward each other.

[7] Id.—Proper Question—Improper Matters in Answer—Remedy. Where a proper question is put but the answer thereto contains matters which are not properly admissible, ·the proper and only remedy of the party aggrieved is to move to have such improper matter stricken out. A mere objection to such testimony is not sufficient to preserve the right of the objecting party to have the question raised reviewed on appeal.

3.  Conspiracy to alienate affections, note, 3 L. R. A. (N. S.) 470.

4.  Evidence in action for alienation of affections, notes, Ann. Cas. 1916C, 751; Ann. Cas. 1917D, 484; Ann. Cas. 1917E, 1020, 1029.

[8] ID.—OBJECTION TO TESTIMONY—FAILURE TO STRIKE OUT FULLY—
WHEN NOT ERROR.—Error of the court in failing to fully strike
out all the testimony to which an objection was made can have
resulted in no prejudice to the party making the objection where
the same fact as shown by the testimony not stricken out was
testified to by the witness without objection.

[9] ID.—REFUSAL OF RIGHT TO CROSS-EXAMINE PLAINTIFF—APPEAL—
ERROR.—It cannot be said on appeal that the trial court committed
error in refusing the request of the defendants to cross-examine
the plaintiff in reference to a conversation with her husband where
the purpose or purport of the question to be asked was not made
known to the trial court and the defendants did not ask the ques-
tion of the witness directly that it might be made a proper sub-
ject of review.

[10] ID.—OBJECTIONS TO TESTIMONY BY TRIAL JUDGE.—Except in un-
usual cases, the trial judge should not make an objection to a
question asked and then sustain his own objection.

APPEAL from a judgment of the Superior Court of
Sacramento County. Charles O. Busick, Judge. Reversed
in part; affirmed in part.

The facts are stated in the opinion of the court.

Jay L. Henry and C. E. McLaughlin for Appellants.

P. H. Johnson and Irving D. Gibson for Respondent.

THE COURT.—We adopt the following portion of our
opinion on the former hearing of this cause:

"The appeal is prosecuted by defendants, under the al-
ternative method, from a judgment against them in the sum
of five thousand dollars.

"It is stated in appellants' opening brief that the action
was brought 'to recover damages from defendants, for en-
ticing, inducing and persuading plaintiff's husband to desert
and abandon her,' while respondent maintains that the cause
of action is 'for the alienation of the affections of Louis De
Bock, husband of respondent.'

[1] "Preliminarily, respondent contends that this court
is precluded from considering the points urged for reversal
for the reason that appellants have failed to comply with the
provision of section 953c of the Code of Civil Procedure,
which provides that 'the parties must, however, print in

their briefs or in a supplement appended thereto, such portions of the record as they desire to call to the attention of the court.' The trial of this case occupied six days and the reporter's transcript contains 752 typewritten pages. Appellants' opening brief consists of 125 printed pages, practically one-half of which are devoted to a reproduction of the testimony which they claim is sufficient fairly and lucidly to present to this court the points upon which they rely, and we think their briefs sufficiently comply with the terms of the section to compel our consideration of the points raised on the appeal. That the legislature did not intend, by the enactment of said section, that the appellant in a case should be required to print in his brief all the testimony appearing in the record, or even all the testimony relating to the points urged by him for a reversal, is indubitably shown by the use of the phrase 'such portions of the record.'

"The points first urged for a reversal by the appellants concern the complaint and the effect of certain allegations of the complaint in an action for divorce instituted by the plaintiff against Louis De Bock and determined prior to the time at which the present action was commenced, and they are: 1. That the complaint fails to state a cause of action; 2. That there is a variance between the facts alleged in the complaint in the divorce action and those set forth in the complaint in this action with respect to the cause or causes culminating in the separation of and estrangement between the plaintiff and her former spouse; that the plaintiff is concluded by the facts alleged in her divorce action and is, therefore, estopped from contradicting them in this action. In other words, the contention is that the plaintiff, having . charged certain specified misconduct against her former husband in her divorce complaint, is conclusively bound by the averments so made, and, therefore, will not be permitted to say in the complaint in this action that the charge so made was not true.

"The decision of these points will require, of course, a consideration of the complaint in this action and (as to the asserted estoppel) also a consideration of the complaint in the action by the plaintiff against the said Louis De Bock for a divorce.

"The complaint herein alleges: That plaintiff and Louis De Bock intermarried at Sacramento 'on the twenty-fifth day

of January, 1905, and ever since have been and now are husband and wife, and up to about the month of June or July of the year 1914, lived happily together as such husband and wife. That the conjugal affection, support, protection, care, comfort, and consortium of the plaintiff's said husband was and is a valuable property right to which plaintiff is entitled. 'That said Louis De Bock, on or about the first day of August, 1914, with the intent at such time to desert and abandon this plaintiff, wrongfully, willfully and voluntarily separated from plaintiff and then and there deserted and abandoned this plaintiff,' by reason of which plaintiff is now living separate and apart from her husband. That, by reason of said alleged wrongful acts, which are reproduced, plaintiff was compelled to bring an action for divorce against her husband which resulted in an interlocutory decree of divorce being entered on September 12, 1914. 'That some time about the month of June, 1914, and prior to the day of the said desertion and abandonment of plaintiff by her husband, the said defendants willfully, wrongfully, wickedly, maliciously, and injuriously combined, conspired, confederated and agreed and contrived, intending thereby to injure this plaintiff and to deprive her of the affection, support,' etc., of her husband, and 'said defendants by reason of said agreement and conspiracy, wrongfully, maliciously, willfully and wickedly behaved and conducted themselves continuously ever since said time, toward this plaintiff in an unkind, inconsiderate, unsociable, cruel, and inhuman manner, thereby gradually undermining and wholly destroying this plaintiff's happiness, peace of mind, and greatly injuring and impairing her health; said conduct . . . continually growing worse and more cruel, until by reason thereof, and in conjunction with the conduct of her husband . . . plaintiff suffered great and grievous mental anguish and pain' and she became sick and confined to her bed. That in execution of said conspiracy said defendants wrongfully, etc., continuously until about the first day of August, 1914, 'enticed, induced, begged, persuaded, and urged' her husband 'to deprive this defendant of all the things which it was the duty of said Louis De Bock to furnish this plaintiff as his wife, and to abandon and desert her and live separate and apart from her, and to refuse to live with her and to neglect her and keep her away from his said home and the home of these defendants, and for him-

self to remain and live with the defendants, August De Bock and his said wife, Ella De Bock, where defendant, Millie Fisher was, and is, a frequent visitor.' That said Louis De Bock did, on or about August 1, 1914, 'by reason of, and on account of, and as a result of the arts, wiles, designs, blandishment, machinations, and persuasion, in pursuance of said agreement and conspiracy . . . entirely desert and abandon this plaintiff and ever since said time has continued to desert and abandon her, and has during all of said times persistently and continuously neglected and refused to furnish this plaintiff all the things which' it was his duty to furnish her. That said defendants, 'combining, conspiring, confederating and agreeing, and willfully, wickedly,' etc., 'intending then and there to injure this plaintiff, to reduce her to penury and deprive her of the affection, support,' etc., of her husband, about the months of June, July, and August, 1914, 'absolutely and entirely alienated, estranged, and destroyed the affection of' her husband for her 'and alienated the affections of said Louis De Bock from plaintiff, and did illegally persuade, entice, and abduct said Louis De Bock from plaintiff, whereby the plaintiff has wholly lost and been deprived of the assistance, comfort,' etc., of her husband, to which plaintiff was entitled and otherwise would have had 'but for the illegal persuasion, conversation, and the said enticement, abduction, and doings and actions of the said defendants.' It was alleged that plaintiff had thereby been damaged in the sum of fifteen thousand dollars, and judgment was prayed for that amount.

"There was introduced in evidence the judgment-roll in the case of Catherine M. De Bock v. Louis De Bock, being the action for divorce referred to in the complaint. It appears therefrom that, on September 12, 1914, the complaint in said divorce action was filed in the superior court of the county of Placer, in which county the parties resided; that the answer of the defendant was filed, a trial of the action was had and findings and an interlocutory decree of divorce on the ground of cruelty were entered on the same day, the decree also providing for alimony to be paid the plaintiff and for a division between the parties of certain real and personal property. A final decree of divorce was entered in the action on September 28, 1915.

[2] "There was no demurrer to the complaint in this action, but even in the face of a general demurrer we would hold the foregoing allegations sufficient in the statement of a cause of action in a case of this character. The eighth paragraph in very plain and direct language charges the formation of a conspiracy by the defendants having for its object the alienation from the plaintiff of the affections of her former husband and thereby to deprive her of his protection, assistance, and consortium, that such conspiracy was actually executed or carried out by the defendants, and that by reason of the wrongful acts of the latter the plaintiff lost the love and the affection and the consortium of her said former husband. A complaint in substantially the same language was held good in *Humphrey* v. *Pope,* 122 Cal. 253, [54 Pac. 847]. It is true that the complaint contains some matters which are wholly immaterial to, and have no necessary connection with, the cause of action pleaded, unless they may be regarded as explanatory by way of inducement of the cause stated; but where, as here, the complaint contains averments which do state a cause of action, it cannot be held bad even under a demurrer, albeit it does also contain matters having no connection with or in no way tending to explain the facts constituting the cause of action or how or in what manner such facts came into existence. If the matters referred to are nonessential or redundant, they could have been stricken from the complaint on motion, in which case the complaint would, as stated, still state a cause of action against the defendants for the alienation of the affections of plaintiff's husband.

[3] "Nor is there any merit in the contention that the plaintiff is estopped in this action from denying certain facts alleged in her complaint in the suit for divorce against Louis De Bock. This contention arises from the fact that the plaintiff in the complaint in the divorce action charged that her then husband treated her in a cruel and inhuman manner for a period of more than one year 'next immediately preceding the commencement' of the action for divorce, particularizing therein certain occasions upon which acts of cruelty were practiced upon her by said Louis De Bock and specifically describing the nature thereof, some of which acts (it was alleged) having been committed in the month of August immediately preceding the month in which the action for

43 Cal. App.—19

divorce was instituted, whereas, in the present action, the plaintiff alleges in her complaint that she and her former husband 'up to about the month of June or July, 1914, lived happily together as husband and wife.'

"It is, of course, elementary that estoppels bind only parties and privies. An estoppel by judgment can only arise and be invoked where the subject matter of the litigation and the parties are the same. Strangers to the suit or those not privies in law to the parties thereto are not precluded under the doctrine of estoppel from setting up rights which, as to them, have not been adjudicated in the action. While the estoppel sought to be invoked here is said to be an estoppel arising upon and in the pleadings, yet, if this were true, we can perceive no logical reason for holding that in effect the attempt here is not to invoke an estoppel by judgment, since the findings of the court in the divorce action are in strict accord with the facts stated in the complaint therein, and certainly, if the plaintiff is upon the doctrine of estoppel foreclosed the right to deny in this action the truth of the facts alleged in her divorce complaint, *a fortiori*, should she be likewise handicapped by the judgment in the divorce action, which involves a definitive and conclusive adjudication of the facts as pleaded by her, so far as is concerned the cause of action so stated as against her former husband. But be that as it may, it is very clear that, since the parties to the present action were not parties to the divorce action and the subject matter of the two actions is entirely and wholly different, the principle that an estoppel will not lie in such circumstances is equally applicable whether the claimed estoppel arises in the pleadings or by virtue of the judgment. [4] It follows that the complaint in the divorce action can perform no other office in this action than that of evidence of an admission upon the part of the plaintiff that the material facts stated in her divorce complaint, which was verified, are true. It is not, of course, conclusive evidence of the truth of the facts so stated and may be rebutted, but it constitutes an admission against interest which may and should be considered in the determination of the issues of fact in the subsequent action. 'A verified petition filed in one case by a party is competent evidence against such party on the trial of another case as a statement or admission, but is not conclusive and carries nothing of estoppel.' (*Solomon R. Co.,* v.

*Jones,* 30 Kan. 601, [2 Pac. 657]. See, also, *Parsons* v. *Cope-land,* 33 Me. 370, [54 Am. Dec. 628]; *Murphy* v. *Hindman,* 58 Kan. 184, [48 Pac. 850]; *Warfield* v. *Lindell,* 30 Mo. 272, [77 Am. Dec. 614]; *Clemens* v. *Clemens,* 28 Wis. 637, [9 Am. Rep. 520]; 16 Cyc. 1050; Freeman on Judgments, sec. 417a; Black on Judgments, sec. 608; *Dahlman* v. *Forster,* 55 Wis. 382, [13 N. W. 264].)

"The remaining and by far the more important problems submitted for solution here involve the question whether the verdict derives sufficient support from the evidence and the further question whether certain rulings upon the evidence were erroneous and, if erroneous, whether prejudicial in their effect upon the substantial rights of the defendants.

"Although, as seen, the briefs contain portions of the testimony, the writer has performed the decidedly operose task of reading all the testimony, which comprises approximately seven hundred pages of typewritten matter. This burden was assumed because of the claim that the evidence is wholly insufficient to support the verdict, and that a number of errors in the admission and exclusion of certain evidence was committed at the trial, and, because, if they were errors, we are required to determine whether or not a miscarriage of justice has followed from those errors (Const., art. VI, sec. 4½)—a question which can be determined in this case only after an examination of the evidence.

"It is, of course, entirely out of the question to essay a reproduction herein, even in substance, of all the testimony which was received and presented to the jury. All that can be done or which, in our opinion, it is necessary to do, is to state in a concise form all of what may be termed the controlling facts—that is, all those facts which, in any view or under any possible interpretation, may be said to afford or tend to afford support to the cause of action stated in the complaint. This we will now proceed to do.

"The defendant, August De Bock, spoken of as 'Gus,' is a brother of Louis De Bock, and defendant, Clara E. De Bock, referred to in the record as 'Ella,' is the wife of August. Defendant, Millie Fisher, for many years had been an intimate friend of her codefendants. She first met Louis De Bock and the plaintiff in 1912, when she visited their house in company with Ella De Bock. Louis De Bock was an engineer in the employ of the Southern Pacific Company.

"There was testimony tending to show that plaintiff and her husband lived happily together for a period of over nine years, from their marriage in 1905 until the spring of 1914. They lived mostly at Roseville and Blue Canyon, in Placer County. During the period above mentioned Louis De Bock treated his wife in a kind and affectionate manner. He would kiss both her and her mother, who lived with her part of the time, when he left the house to go on his run. Plaintiff testified that in about March, 1914, her husband became cool and indifferent toward her; that in June, 1914, he went to Colfax to work, leaving her at Blue Canyon, and that about the first of August he deserted her. She also said that defendants had always been friendly toward her and had visited her frequently until in the summer of 1914, when they ceased visiting her and became very indifferent and cool toward her. Some time in the month of August, 1914, plaintiff and her mother visited Ella De Bock and Millie Fisher at the house of said Ella in Blue Canyon and had a conversation with them. Plaintiff spoke of a letter written by Ella De Bock and asked why she had written it. Defendant Ella said that she had written, saying that plaintiff and her husband were having trouble. Plaintiff testified: 'She started in about my husband and she said that I was a fool to put up with him the way he was carrying on, and that he was low and dissipated, and she was sure he was running around with fast women, and she said that I was a superior woman to him; she said: 'The only thing left for you to do is to get a divorce; if I were you I would go away off to Los Angeles, where I never would come in contact with him again. You could take him to the desert of Sahara, and he would never be any different.' Asked by plaintiff if she was sure her husband was running around with fast women, defendant, Ella, said that 'she didn't know it for a fact, but was sure of it. . . . She said: 'I would take my maiden name back.' Plaintiff testified that defendant, Fisher, spoke up and said that she admired Ella for the way that she took the thing; that when she first met my husband she thought he was a pretty good-looking fellow; but she said, 'Now, he is low and dissipated, degraded looking,' and she said: 'Kate, you are a fool to put up with anybody like that; there is too many men in the world,' and she says: 'I could get one any time, but no man for me. I advise

you to get a divorce.' Plaintiff said that, in July, 1914, at the house of Ella De Bock, in Roseville, she had a conversation with her husband in which she asked him, 'What is the matter with you, Lou, anyway? Why are you treating me this way?' to which he replied, 'Kate, the only way for you and I to get along is for me to quit my job, and for us to go off where my folks will never know where we are.' Plaintiff said: 'Why do you talk that way? . . . My folks aren't trying to separate us.' At about the same time, at Roseville, plaintiff's husband told her he was not going to live with her any more, and said: 'If you don't think you have got grounds enough to get a divorce, I will get a woman and let you catch me with her'; and plaintiff said he told her 'he had been running around with fast women, and all that sort of thing; he wouldn't live with me any longer.' She said that she had tried to get him to come back to her, even after she had filed her complaint for divorce, but that he said: 'It has gone this far, let it go through.' Plaintiff said that when she would go to the train to see her husband, if Gus and Ella De Bock were there he would hardly speak to her, but that when she would go the next day, if he was alone, he would get off the engine and kiss her and be himself again.

"Mrs. Rose Gray testified that very often she and Ella De Bock discussed the plaintiff and that on one occasion said Ella stated that 'the only way Lou could get rid of her was to take her meal ticket away from her.' It appeared that plaintiff had a painting which she had taken to Sacramento to have valued and Ella said to the witness that 'she didn't care if she got a hundred thousand dollars for the picture, just so she got out of the family, and let the De Bocks alone; that Gus said he would give her five dollars if she would take her maiden name back'; that plaintiff's influence was so strong over her husband 'that they would have to move away until this thing was put through.' At one time, speaking of the Caminetti case, Ella said to witness 'that she didn't blame Drew Caminetti at all, if he was in love with the girl, and that his own father upheld him, and that if she were in Lou's shoes, she would do the same.'

"Louis De Bock first met defendant, Fisher, in 1912, when she, with Ella De Bock, visited the home of himself and wife at Blue Canyon and remained there about eight or nine days.

They made them another visit of two or three days' length in 1913. In the same year, Ella De Bock had a cottage at Truckee, where Miss Fisher was her guest. Louis De Bock visited them every Saturday night for about two months. He testified that in 1914 he saw Miss Fisher one evening in Oakland at his sister's house and later the same year he met her again in Oakland.

"During the month of July, 1914, Mrs. Ella De Bock wrote to Mrs. Rose Gray, who lived at Blue Canyon, requesting her to secure a house for her at the canyon during the summer months and not to let plaintiff know of it. Mrs. Gray secured a house and Mrs. Ella De Bock and Miss Fisher occupied it from the middle or latter part of July. Miss Fisher testified she had always been friendly with plaintiff and had visited at her house until the summer of 1914, but that at that time 'we were requested by Mrs. Gus De Bock to stay away from there, not mix in our family affairs.' At about this time, Ella De Bock and Miss Fisher kept their clothes on most of one night without retiring in order to be sure of meeting the respondent's husband as he passed through on his run at 4 o'clock in the morning. He dismounted from the engine and hugged and kissed both of them. On one occasion Clara E. De Bock met Louis De Bock at a train and 'patted him on the face in an affectionate way.' From June 15 to July 5, 1914, Louis De Bock roomed at the house of Mrs. Jessie M. Wales, at Colfax. Louis was then the fireman on the locomotive engine of which Mrs. Wales' husband was the engineer. While stopping at the Wales', Louis received one or more letters from the defendant, Fisher, signed 'Millie,' and he spoke of her on those occasions as 'My Mill,' and called her his 'pal' and friend. On one occasion Louis showed Mrs. Wales some samples which he said were samples of Millie's dresses and that she [Millie] had sent them to him.

"In August, 1914, defendant, Gus De Bock, went to plaintiff's house to get Louis De Bock's hunting clothes. She said he told her that four men, including himself and her husband, were going on a hunting trip; that no women were going along. The three defendants went by train to Reno and were there met by Louis De Bock. From Reno the four of them, with a man named Judd, started in an automobile belonging to Gus De Bock and drove to Sacramento.

The party stayed two days in Sacramento, Louis De Bock stopping at a hotel and the defendants going to the home of the mother of Mrs. Ella De Bock. The defendants and Louis De Bock then went in the automobile to Nelson, Chico, Oroville, and Lincoln, remaining one night in each place. They had a camping outfit with them, but the testimony was that they did not camp out at any time. The auto trip consumed about a week.

"We have now presented herein the salient facts brought out by the testimony. There are many other facts in the record of the same general character of those embraced in the foregoing statement to which we have not considered it necessary to make specific reference herein for the purpose for which the evidence is to be considered here.

"It must, of course, be conceded, in view of the verdict, that, notwithstanding that the plaintiff in her divorce complaint under oath declared that 'for more than one year next immediately preceding the commencement of the foregoing action, defendant has treated plaintiff in a cruel and inhuman manner,' etc., specifying times and places when and where such acts of cruelty were committed, she and her former husband, down to a few weeks prior to the commencement of said divorce suit, lived amicably and happily together, never prior thereto having had anything more than those inconsequential misunderstandings which are common among married people and which are mere temporary outbursts, generally not followed by serious results. These further facts are, from the verdict, to be conceded as having been established: That from the date of the intermarriage of Louis De Bock and the plaintiff, in the year 1905, down to about a year prior to the date of their separation by divorce, the defendants, Gus and Clara E. De Bock, were on uniformly friendly terms with the plaintiff; that at about the time indicated they turned against the plaintiff, the defendant, Gus De Bock, having developed a feeling of intense hatred for her; that both Gus and Clara E. De Bock were at the least agreeable to if not anxious for a permanent separation of the plaintiff and Louis De Bock; that Gus and Clara De Bock, as well as Louis De Bock, were very much attached to Millie Fisher, and that the latter reciprocated that sentiment as to all those three persons; that both Gus and Louis De Bock almost invariably, upon returning from their runs

(Gus being also a locomotive engineer in the employ of the S. P. Co.), greeted both Clara E. De Bock and Millie Fisher, upon meeting them on those occasions, in a very affectionate manner, often kissing the women; that Gus De Bock, Clara E. De Bock, Millie Fisher, and Louis De Bock, between themselves arranged the outing in the automobile, mentioned above, and that (it may reasonably be inferred) it was the purpose of all of them to make the plaintiff believe that the party constituting the 'outing party' was to consist entirely of men—that no females were to be members thereof. It is further to be conceded that it is fairly and reasonably inferable from the evidence that Gus and Clara E. De Bock had discussed with Louis De Bock the proposition of a permanent legal separation between himself and the plaintiff. In a word, it is the duty of this court to assume that every word of the evidence as to the acts and conduct of the defendants in connection with the plaintiff and Louis De Bock is absolute verity," and so viewing the record, what shall we conclude as to the sufficiency of the evidence to support the verdict?

"Unquestionably, the theory upon which the complaint proceeds is that there existed between Louis De Bock and Millie Fisher a mutual sentiment of love and affection; that Louis, having transferred his affections from the plaintiff to Miss Fisher, desired to be freed from the then insuperable legal obstacle in the way of making that young woman his wife; that Gus and Clara De Bock, being greatly attached to Miss Fisher and having conceived a deep feeling of animosity against the plaintiff, joined Miss Fisher (and perhaps Louis De Bock) in a scheme the consummation of which would be the divorcement of the plaintiff and Louis and the subsequent intermarriage in due legal time of the latter and Miss Fisher. At the time of the trial of this case—over two years after the plaintiff was divorced from her former husband—Louis De Bock and Millie Fisher had not intermarried. There is no direct evidence that they ever intended to intermarry or that they were more than good friends. There is no evidence that they ever maintained improper relations with each other, unless it is to be declared that the fact that he, as did Gus De Bock, in the presence of his wife, often kissed her when he met her affords an inference of meretricious relations between them, a proposition abhorrent to decent and right thinking. But let it be assumed that Louis De Bock

was 'in love' with Millie Fisher, that she loved him and that as a consequence Louis lost all love and affection for his wife; yet the truth remains that there is no direct evidence that that condition was not brought about wholly and solely through the conduct and acts of Louis himself. In other words, if it be true that there was generated and developed in the hearts of Louis De Bock and Miss Fisher a mutual sentiment of love and affection sufficient to overcome and destroy the love and affection which Louis once had for the plaintiff, the evidence, while perhaps having a slight tendency to the contrary, does not clearly show but that Louis himself was the wooer and not the wooed, and that he himself took the initiative in bringing about that state of feeling or sentiment between them. In short, the record discloses very slight evidence, the effect of which is to negative the proposition that Louis De Bock's whole conduct toward Millie Fisher was his own voluntary act, uninfluenced by any active interference on her part. (*Buchanan* v. *Foster,* 23 App. Div. 542, [48 N. Y. Supp. 732, 735].)''

[5] Upon further consideration we have reached the conclusion that not only is the evidence against Millie Fisher very slight, but that it is not legally sufficient to justify a verdict against her.

''The evidence is obviously stronger against the De Bock defendants than it is against Miss Fisher. But the evidence against all the defendants is entirely of circumstances. There is no direct evidence that the conduct and acts of any of the defendants constituted the cause of the abandonment by Louis De Bock of his wife or his loss of affection for her,'' but considering all the circumstances disclosed by the record, we think it cannot be said that the verdict as to the De Bocks is unwarranted.

In cases like this, depending for their support entirely upon circumstantial evidence, the task of the reviewing court is more difficult than in those instances wherein the verdict rests, in part at least, upon the direct testimony of witnesses. This circumstance furnishes an additional reason why we have given this record such deliberate consideration, devoting especially close attention to the questions whether the verdict is supported, and whether any prejudicial error was committed by the trial court in its rulings upon the admissibility of evidence.

As to the sufficiency of the showing to support a rational inference in favor of plaintiff we have already declared our judgment. It remains to notice the other specifications of alleged error, and of these only five are regarded of sufficient gravity to require specific attention.

1. The record shows the following proceedings while the plaintiff was on the stand: "Mr. Johnson: Q. In July, 1914, when you were visiting Ella De Bock at Roseville, did you have a conversation with your husband at that time? A. Yes. Q. Well, what was it? A. Well, I asked him what was the matter with him and he told me—we had—we took a walk; he had not been treating me right, for quite a while, and we took a walk and Ella De Bock, she went out some place, and him and I took a walk, and I asked him: 'What is the matter with you, Lou, anyway? Why are you treating me this way? And he said, Kate, the only way for me to get along,'— Mr. Wachhorst (Interrupting) : 'We object to that as irrelevant, incompetent and immaterial.' The Court: 'It will be admitted for the purpose of showing the relations existing between the witness and her husband; not for the purpose of binding the defendants, except as it would show the relations. Go on'— A. Well, we took a walk, and I asked him what was the matter with him that he was treating me the way he was, and he said: 'Kate, the only way for you and I to get along, is for me to quit my job, and for us to go off *where my folks will never know where we are*—never find out where we are.' I said: 'Why do you talk that way? My folks aren't trying to make trouble with me'—I asked it of him—and I said: 'You do not want to quit your position,' and I said to him: 'If you feel that way why don't you quit?' and he said: 'No, I will take a lay-off.' And I said, 'My folks aren't trying to separate us.' He said: 'That is just the way it stands.' '' The point of the objection is that "the defendants could not be prejudiced by any declaration, act, or omission of plaintiff or her husband not made in their presence." (Code Civ. Proc., sec. 1848; *Humphrey* v. *Pope*, 1 Cal. App. 376, [82 Pac. 223] ; *Bashare* v. *Parker*, 146 Cal. 529, [80 Pac. 707].)

It is quite obvious, however, that the only portion of the answer that could possibly prejudice the defendants was the statement in reference to their going away "where my folks will never know where we are." But a sufficient answer to

appellants' criticism of this is, that no motion was made to strike it out.   [6]   The question itself was concededly proper, as evidence of conversations between the husband and wife was admissible to indicate their feelings toward each other. Hence, any objection to the question would have been properly overruled. But, if it may be said that the objection of appellants made in the midst of the answer can be considered as a motion to strike out, then, it is quite apparent that the motion was properly denied, since she had up to that time said nothing whatever to connect appellants in the slightest degree with any trouble between herself and her husband.   [7]   The proper practice in such cases is well settled, and it is sufficient to refer to the decision of the supreme court in the case of *People* v. *Lawrence,* 143 Cal. 148, [68 L. R. A. 193, 70 Pac. 893]. Therein it is said: "Under such circumstances, where it is not apparent from the question itself that the response thereto will, upon any theory of the case, be inadmissible, an objection alone to the question will be of no avail, but the party must, when the inadmissible evidence is for the first time disclosed by the answer, move to have it stricken out. *This is the proper and only remedy, and the appellant here having failed to avail himself of such a motion is not in a position to predicate error merely upon a question which, upon its face, did not show that the testimony to be given in response to it would necessarily be inadmissible.*" Moreover, the court in its ruling limited the consideration of the evidence to the single purpose of indicating the relation of the parties, and we must presume on appeal that it was considered by the jury only for that purpose.

2. Complaint is made of the testimony of a Mrs. Wales that Louis De Bock told her either in June or July, 1914, that he had received two letters from the defendant Fisher. But the court struck out this evidence in the following language: "As to the letters which Lou De Bock told her he received from Millie Fisher, why the motion will be granted. It is hearsay, anything that is told her, and her only information is what he told her—is hearsay." Furthermore: "The court instructs the jury that as the court has granted the motion to strike out that portion of the witness' testimony wherein she stated what Louis De Bock had told her concerning letters, and what he told her concerning whom

the letter was from; but as to the letters which she saw herself and read, and the testimony will be one letter; that stands, and is not stricken out." Appellants contend that there is some uncertainty as to this ruling. But it is clear that everything that was said by Louis De Bock was stricken out. There was nothing left of any importance in the answer to the question, to which an objection had been made. The one letter to which the court refers was undoubtedly the one concerning which she testified without objection when she was asked the question: "Did Lou De Bock ever give you any letters to mail to Millie?" and she answered, "One." Furthermore: "What did you do with it?" and she answered: "I burned it." [8] But, if we concede that the court did not fully strike out the testimony to which an objection was made, it is quite apparent that it resulted in no prejudice to appellants, since the same fact was shown without objection. (*Fernandez* v. *Watt,* 26 Cal. App. 86, [146 Pac. 47]; 3 Corpus Juris, 815.)

3. The situation is similar in reference to the ruling of the court as to a conversation between plaintiff and one Bob Wales as to said correspondence. If error was committed, it was clearly without prejudice for the reason already stated.

Besides, the contents of the letters were not shown, and it cannot be assumed that there was anything therein of a compromising or improper character, or that the jury was influenced against any of the defendants by the mere circumstance that Lou De Bock had corresponded with Miss Fisher.

4. It is urged that the court erred in refusing a request of appellants to cross-examine the plaintiff in reference to a conversation with her husband. The request itself was somewhat indefinite, being in the following language: "Well, now, your Honor, in regard to Ben Smith, may I ask the question regarding a conversation along the same lines with her husband?" The reference to "Ben Smith" may be understood when we recall that appellants had unsuccessfully attempted to question the witness about a conversation with said Ben Smith. [9] If appellants desired to interrogate plaintiff concerning a conversation with her husband, they should have put the inquiry in more precise terms. It does, indeed, appear that the court did not so understand the question. Again, they should have asked the question of the witness directly to make it the proper subject of review.

Moreover, the question does not purport to be in reference to any quarrel, disagreement or dissension between her and her husband. If such was the purpose of the question, it should have been disclosed to the court. In *County of Sonoma* v. *Hall*, 129 Cal. 659, [62 Pac. 213], objections were sustained to certain questions upon cross-examination. It was contended on appeal that the questions should have been allowed for a certain purpose, not evident on the trial, but the supreme court said: "If such was the purpose of the questions, a direct question should have been asked in such manner as to show the aim of counsel."

Again, assuming that counsel desired to ask the witness concerning a controversy about her having been in a hospital at Sacramento, it may be said that the husband testified fully as to the conversation, and it thus appears that the conversation did not amount to a quarrel, and the fact that they lived together for six years thereafter is quite satisfactory evidence that said conversation did not cause their separation.

5. Plaintiff was asked on cross-examination concerning a "disagreeable conversation" with her husband about one Schultz. [10] The trial judge made an objection to the question and then sustained his own objection. Such procedure is not to be commended except in unusual cases. Counsel for respondent seem to have been amply able to fully protect the interests of their client, and they should have been permitted to make whatever objection they deemed advisable. But what has been said in reference to the preceding matter will apply to this question which related to an occasion of six years prior to the separation of the parties. And whatever discord was thereby created was clearly condoned and forgotten in the subsequent six years of felicitous marital relation.

Some complaint is made of certain criticism made by the trial judge of one of the witnesses and of the counsel for appellant. It may be admitted that the stricture should not have been indulged in, but the jury was fully and clearly instructed to disregard everything said by the court along that line and we must assume that the instruction was followed.

The judgment as to Millie Fisher is reversed and as to the other defendants it is affirmed.

HART, J.—As the writer of the former opinion filed in this cause, and in view of the fact that we have reached a different conclusion from that arrived at on the former consideration of the case, I deem it proper to explain that in the original consideration I was misled by the lack of clearness of the record as to the action of the court with respect to certain evidence to which objections were, in my opinion, well taken, and which I conceived to be, in view of the slightness of the proof against the defendants, sufficiently prejudicial to require a reversal of the judgment as to all the defendants. Upon a reconsideration of the rulings upon which the reversal by the former opinion was ordered, however, I find, as the present opinion shows, that the court struck out all the damaging portions of certain testimony to which objection was made and that, as to other testimony, which I held to be erroneous and prejudicial, no motion was made to strike it out after it had been given, although there was an objection made to it after it got into the record. As the main opinion shows, in such circumstances—that is, where a proper question elicits from a witness improper testimony—the remedy is by a motion to strike out such testimony, a mere objection to it not being sufficient to preserve the right of the objecting party to have the question so raised reviewed. Other rulings as to other testimony which appeared to my mind to be prejudicially erroneous are disposed of satisfactorily to me in the present opinion of the court.

I desire further to add that, after a fuller consideration of the case, I am still convinced that the judgment should not stand against the defendant, Fisher. While it appears that the three defendants were close friends and companions, and that Louis De Bock was also very friendly with Miss Fisher, it was not made to appear that the latter did or said anything calculated to cause an estrangement between the plaintiff and her husband, or that she had or entertained any feeling of animosity or unkindness toward the plaintiff. There is no evidence tending to show that Miss Fisher ever attempted to persuade Louis to desert his wife or ever said anything to Louis or any other person in the least derogatory of the personal character of the plaintiff. There is, in short, nothing in the evidence tending in the slightest degree to connect Miss Fisher with a conspiracy to which the defendants, De Bock, might have been parties, the object of

which was to cause a separation and divorce between the plaintiff and Louis De Bock. The fact that Miss Fisher was on intimate terms of friendship with her codefendants and Louis De Bock is without special significance in the absence of proof that she had committed acts or uttered words calculated to influence Louis against the plaintiff, and which were designed by her to cause the alienation from plaintiff of Louis' love and affection. There are, it is true, some circumstances from which the conclusion might justly follow that Louis De Bock and Miss Fisher were "in love with each other," but, conceding that to have been the case, there is no evidence showing or tending to show that Miss Fisher was responsible for that state of the affairs between them. In other words, putting it in the language of the main opinion, it was not made to appear but that Louis himself "was the wooer and not the wooed," and that but for what might have been, so far as the record discloses, his undue attentions to her, wholly initiated and persistently prosecuted by him, she would not have given him any serious thought as an unholy suitor for her affections. These observations are, of course, based upon the assumption that a reciprocal sentiment of love had developed between Louis and Miss Fisher, a fact as to which the evidence is by no means clear and convincing, since, after all, the evidence as to the relations between Louis and Miss Fisher and the sentiments they entertained for and toward each other is justly capable of the interpretation that their relations at all times were only those which commonly exist and are entertained between mere friends or between persons entertaining no thought of each other beyond that which is motivated by a mere ordinary sentiment of friendship.

But it is not necessary to discuss this matter further. I am satisfied, from a thorough examination of the record, that no case was made against Miss Fisher, and for the reasons stated in the main opinion I concur in the reversal of the judgment as to the defendant, Fisher, and in its affirmance as to the defendants, De Bock.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 14, 1919.

All the Justices concurred.